[Civ. No. 896.  Third Appellate District.—February 7, 1912.]

EMILY B. KELLEY, Respondent, v. H. C. LONG, Appellant.

LANDLORD AND TENANT—RULE AS TO FORCIBLE EVICTION FROM SUBSTANTIAL PART OF PREMISES INAPPLICABLE TO INSIGNIFICANT PART.—The rule that if a tenant is forcibly evicted by the landlord from a substantial part of the demised premises, and the lease is not terminated, there can be no apportionment of rent, and the tenant cannot be compelled to pay the rent reserved, and that an actual ouster is not necessary to constitute an eviction, since any act of the lessor which results in depriving the lessee of the beneficial enjoyment of the premises will constitute an eviction, does not apply when it does not

appear that the interference has resulted in depriving the lessee of a substantial, as distinguished from an insignificant or inconsequential, portion of the demised premises.

ID.—ACTION FOR RENT—POSSESSION OF LESSEE NOT CHANGED—TRESPASS UPON APPURTENANT WATER RIGHT—DAMAGES—RENT NOT EXTINGUISHED.—Where it appears that the lessee sued for rent was at all times in the actual possession and occupancy of the premises and of the water rights appurtenant thereto, except that it is found that a comparatively small portion of the water was wrongfully taken with the knowledge and consent of the lessor, on or about April 1st of one year, and that the damage resulting therefrom could be measured in money was the sum of $40 only, which was deducted from the rent reserved, it is held that the act of interference amounted to no more than a mere trespass, and that there was no eviction from a substantial part of the premises that could extinguish the rent.

ID.—CONSISTENCY OF FINDINGS—MERE PASSING TRESPASS NOT INCONSISTENT WITH POSSESSION.—Since no mere passing trespass amounts to an interference with possession, the finding that the defendant had the sole and exclusive possession of the demised premises and the appurtenant water rights is not in conflict with the finding that a third party named, with the knowledge and consent of the plaintiff, interfered with said water rights, to defendant's detriment in a specified sum awarded to defendant, on one occasion only.

ID.—SUPPORT OF FINDING AS TO TRESPASS—CONFLICTING EVIDENCE—RESPONDENT NOT ENTITLED TO RELIEF.—It is held that, although there is some evidence urged by respondent which might have sustained a finding that the third person named had the right to divert a portion of the water for use on his land during defendant's term as lessee, yet as there is some evidence supporting the finding that he was a trespasser, and not authorized to use any part of the water, this court cannot change the finding, and that the respondent, not having appealed, is not in a position to ask for such relief.

APPEAL from a judgment of the Superior Court of Lassen County.  J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

Rankin & Julian, for Appellant.

F. A. and E. A. Kelley, for Respondent.

HART, J.—This is an action for the recovery of rent alleged to be due the plaintiff from the defendant under the

terms of a certain lease executed by the plaintiff and one E. A. Kelley of a tract of land known as the "Kelley Ranch," and situated in Lassen county.

(E. A. Kelley, subsequently to the execution of said lease, conveyed and transferred to plaintiff all his interest in the demised premises.)

The complaint prayed for judgment in the sum of $454.34, but the court, by which the action was tried, a jury having been waived by the parties, awarded judgment in the sum of $414.34.

This appeal is prosecuted by the defendant from the judgment, supported by a bill of exceptions.

By the lease the lessors demised to the defendant the land therein described, together with the appurtenances thereto, for the term of five years, commencing on the first day of March, 1908, at the yearly rental of $500 in United States gold coin, to be paid as follows: $250 on or before the first day of March, and $250 on or before the first day of October, of each and every year "during the five year term of this lease, as aforesaid."

The gravamen of the complaint is that the defendant has paid the sum of $45.66, only, on account of said rent for the year commencing on the first day of March, 1909, and that there is, therefore, a balance due and owing plaintiff from defendant on account of the rent for said year, the sum for which plaintiff prays judgment.

Among other covenants of said lease is the following: "That the said second party, paying the said rent and performing said covenants and promises, shall and may at all times peaceably have, hold and enjoy the said premises, without any manner of let, suit, trouble or hindrance of or from the said first parties or any other person whomsoever."

The answer admits the execution of the lease as alleged in the complaint; denies that any balance is due plaintiff from defendant on account of the rent referred to in the complaint, and then, as a special defense, and upon which a counterclaim in the sum of $717.80 is set up, the answer, in substance, alleges: That, in connection with the demised land, there are certain water rights and ditches from Susan river, which said water rights are exclusive to the use of said real property and

under the ownership and control of the lessors; that the land in question is suitable for and adaptable to agricultural purposes when properly irrigated and watered by means of the water rights and ditches in connection therewith; that defendant entered into the possession and occupancy of said land and the water rights appurtenant thereto, "believing that he had the sole and exclusive right to use such water and water rights for the purposes of irrigation on the said Kelley Ranch; that he thereupon planted crops on said premises and property and prepared to irrigate and cultivate and properly harvest the same"; that, about the first day of April, 1909, one F. H. Shanks, then in possession of and occupying a portion of the "Kelley Ranch," known as the "Frank Kelley place," without the consent of the defendant, "and with the knowledge and consent of the plaintiff herein took the possession and control of all the water and water rights appurtenant to and connected with said leased premises and interfered with defendant's use of the same and hindered and prevented said defendant from using the said water for irrigation purposes on said leased premises"; that thereafter, and during the irrigating season of 1909, said Shanks, "without the consent of defendant and with the full knowledge and consent of the plaintiff herein, notwithstanding the covenants and agreements on the part of plaintiff in said lease contained, was permitted and allowed by said plaintiff to continue in the possession of said water and water rights and to use the same in such manner as to hinder and prevent said defendant from harvesting his crops or from making proper or any use of said water upon said leased premises." It is then alleged that the damage to the defendant by reason of the aforesaid acts of said Shanks, with the knowledge and consent of the plaintiff, amounted to the said sum of $717.80.

The court found that the defendant, on the first day of March, 1908, by virtue of the lease referred to by the complaint, went into the possession and occupancy of the demised premises and "he ever since has been and still is in possession and occupancy of the same as such lessee, together with the water and water rights appurtenant thereto and used in connection therewith; that during all of said time said defendant had the sole and exclusive possession and right of possession of said premises and water rights and had the sole

and exclusive right to use such water and water rights for irrigation purposes on said Kelley Ranch''; but the court found further that, about the first day of April, 1909, F. H. Shanks did interfere with the defendant's use of a portion of the water and water rights referred to in the answer, and that such interference was with the knowledge and consent of the plaintiff and resulted in damage to the defendant in the sum of $40. The court, however, found that said water and water rights were not interfered with by Shanks, with the knowledge and consent of plaintiff, subsequent to the first day of April, 1909, as charged in the answer, and that the defendant did not suffer damage in the sum of $717.80, as alleged by him. The court concluded as a matter of law that the plaintiff was entitled to judgment in the sum sued for, minus the sum of $40, found to be the extent of the damage sustained by the defendant by the acts of Shanks with the consent of the plaintiff.

The main contention of the appellant is that the act of the plaintiff in consenting to the use of the water and water rights appurtenant to the demised premises by Shanks and the latter's use thereof or interference therewith, with plaintiff's consent, amounted to an eviction of plaintiff from the demised premises and, therefore, destroyed the right of plaintiff to the rent reserved by the lease.

The rule invoked and sought to be applied in this case by appellant is thus stated in the syllabus in the case of *Skaggs* v. *Emerson,* 50 Cal. 3: "If a tenant is forcibly evicted from a *substantial* part of the demised premises by the landlord, and the lease is not terminated, but the tenant still continues to occupy, under the lease, the part of which he retains possession, the tenant cannot be compelled to pay the rent reserved, for, in such case, there can be no apportionment of rent.'' And it is not necessary that there should be an actual ouster to constitute an eviction, for any act of the lessor which results *in depriving the lessee of the beneficial enjoyment of the premises* will constitute an eviction. (*Agar* v. *Winslow,* 123 Cal. 587, 593, [69 Am. St. Rep. 84, 56 Pac. 422]; *Camarillo* v. *Fenlon,* 49 Cal. 202; *Skaggs* v. *Emerson,* 50 Cal. 3; *Levitzky* v. *Canning,* 33 Cal. 299.)

But we think the rule as stated does not apply where it does not appear that the interference has resulted in depriving the

lessee of a *substantial* as distinguished from an insignificant or inconsequential portion of the demised premises, or, in other words, in depriving him of the beneficial enjoyment of a *substantial* portion of the premises. In nearly all the cases cited by appellant and to which we have referred it will be found that the interference by the lessor resulted in depriving the lessee of the right to collect and receive the rents from subtenants before the termination of the lease. Such an act would, of course, amount to an eviction, and the rule relied upon by appellant would apply.

But, in the present case, the lessee was at all times in possession and occupancy of the premises and the water rights appurtenant thereto, except, according to the findings, a comparatively small portion of the water which, it was found, was wrongfully taken, with the knowledge and consent of the lessor, by Shanks, on one particular occasion during the year 1909—on or about April 1st of that year. That the *portion* of the water and water rights with which Shanks wrongfully interfered was inconsequential and did not disturb the defendant's beneficial enjoyment of a substantial portion of the demised premises, is shown by the finding that the damage to the defendant resulting from such interference, measured in money, amounted to the sum of $40 only. Obviously, if the interference with defendant's possession was no more serious than that finding indicates (and the sufficiency of the evidence to justify the findings is not challenged here), the act of Shanks can amount to no more than a mere trespass. And it is the settled rule that no acts of "molestation, even if committed by the landlord himself or by a servant at his command, amount to a breach of the covenant, unless they are more than a mere trespass." (Taylor's Landlord and Tenant, 9th ed., sec. 309, and cases cited.) The defendant, at all times, enjoyed possession and occupancy of these premises, including the water rights, and had and exercised full and exclusive use of the water, except the trifling portion of which he was deprived by the act of Shanks on a single occasion. It most certainly cannot be justly said that this act amounted to an eviction of the defendant from a substantial portion of the demised premises, and should, therefore, operate as a suspension or extinguishment of the rent. (Taylor's Landlord

and Tenant, sec. 309; *Oglive* v. *Bull,* 5 Hill (N. Y.), 54.)   A mere passing trespass cannot operate to so oust a tenant of his possession as to amount to an eviction or a dispossession.

The foregoing views constitute, we think, a sufficient answer to the further contention of the appellant that the findings are inconsistent and contradictory, in that finding 3, by which the court finds that the defendant had the sole and exclusive possession and occupancy of the premises and water rights appurtenant thereto is in direct conflict with finding 7, whereby the court finds that Shanks, with the knowledge and consent of plaintiff, interfered with said water rights to the detriment of the defendant.   If, as we have held, the act of Shanks, with the consent of the plaintiff, as found by finding 7, was a mere trespass, then the finding that the defendant had the "sole and exclusive possession of the premises" at all times, is strictly true.

Counsel for the respondent insists that there is no evidence which justifies the finding of the court that the defendant was damaged in the sum of $40 and asks that the judgment be so modified as that the plaintiff may be awarded the full amount sued for.   While there is evidence in the record from which, apparently, the court would have been justified in educing a finding that the defendant accepted the lease with a full understanding that Shanks had always used some of the water from the ditches and would be entitled to a certain share thereof during the defendant's term, still we cannot say that there is not some evidence that supports the finding which, in effect, declares that he was not authorized or entitled to use any portion of said water.   It is, of course, an obvious proposition that a court of review cannot change a finding of a trial court where there is any evidence that justifies and supports it.   Moreover, not having taken an appeal, the plaintiff is not in a position to ask for such relief.

So far as we are able to judge from the record before us, the judgment was legally awarded, is just, and should not, therefore, be disturbed.   It is accordingly affirmed.

Chipman, P. J., and Burnett, J., concurred.