[Civ. Nos. 2954 and 2961. First Appellate District, Division One.— September 5, 1919.]

NORTH PACIFIC STEAMSHIP COMPANY (a Corporation), Appellant, v. TERMINAL INVESTMENT COMPANY (a Corporation), Respondent.

[1] LANDLORD AND TENANT—DEPRIVATION OF ENJOYMENT OF SUBSTANTIAL PORTION OF DEMISED PREMISES—CONSTRUCTION OF FINDINGS. In this action by a tenant to have a lease declared rescinded, the effect of the finding of the trial court "that plaintiff has not suffered, or sustained, any material or substantial damage in any amount of money, or thing whatever, by reason of all, or any, of the acts complained of by plaintiff, and found by the court to have been done by defendant," when read with the finding as to the acts done, or suffered to be done, by the defendant, was that plaintiff was not deprived of a *substantial* as distinguished from an insignificant or inconsequential portion of the demised premises, or, in other words, deprived of the beneficial enjoyment of a *substantial* portion thereof.

[2] ID.—NECESSITY FOR ACTUAL OUSTER—WHEN RULE INAPPLICABLE. Where the lessee is not deprived of the beneficial enjoyment of a substantial portion of the leased premises, the rule that "it is not necessary that there should be an actual ouster, to constitute an eviction, for any act of the lessor which results in depriving the lessee of the beneficial enjoyment of the premises will constitute an eviction," does not apply.

[3] ID.—OBSTRUCTION OF PASSAGEWAY BY OTHER TENANTS—TRESPASS. In this action by a tenant to have a lease declared rescinded, the acts of defendant's tenants, who occupied the adjoining premises, in obstructing the passageway, or "open space," leading to plaintiff's premises by hanging and displaying therein a café lunchsign, two feet wide, and about six feet in height, during certain hours of the day, amounted to no more than a mere trespass.

[4] ID.—TRESPASS NOT BREACH OF COVENANT.—No acts of molestation, even if committed by the landlord himself, or by a servant at his command, amount to a breach of the covenant of quiet enjoyment and possession, unless they are more than a trespass.

[5] ID.—PASSING TRESPASS—EVICTION.—A mere passing trespass cannot operate to so oust a tenant of his possession as to amount to an eviction or a dispossession.

[6] ID.—INDUCEMENT FOR MAKING LEASE—OBSTRUCTION OF PASSAGEWAY—FINDINGS NOT INCONSISTENT.—In this action by a tenant to have the lease declared rescinded, the findings of the trial court to the effect that the continued existence of the passageway, or "open space," leading to the leased premises was a material part of the consideration for the obligation of plaintiff under said lease, and constituted a material inducement to plaintiff to enter into the same, and that the obstruction of such passageway for a period of not exceeding twenty-one days did not work a failure of any material or substantial part of the consideration to plaintiff for its lease, and that plaintiff had sustained no substantial or material injury or damage by reason of the obstruction, or by reason of any of the acts complained of, were not inconsistent and contradictory.

[7] ID.—RESCISSION—REVIVAL BY LESSOR.—The principle of law that after the lessee has determined to rescind the contract, and given notice to the lessor that the lease is ended by reason of the latter's failure to comply with its terms, the termination of the lease is complete, and the lessor cannot thereafter by any act of its alone renew the lease by removing the cause of the alleged eviction by the lessor, is applicable only where the lessee has good cause for rescission.

[8] ID.—EVICTION—RIGHT OF RESCISSION.—An eviction must be established before the right of rescission of the lease springs into being.

[9] ID.—WANT OF EVICTION—ABATEMENT OF TRESPASS—EVIDENCE.—In this action by a tenant to have a lease declared rescinded, the trial court having found that an eviction had not occurred by

3. Constructive eviction resulting from positive overt act of landlord, notes, 7 Ann. Cas. 593; 19 Ann. Cas. 690; 7 A. L. R. 1103.

reason of the acts of trespass committed by the other tenants, was right in permitting the defendant to show the circumstances under which the trespass was abated.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a motion for an order vacating and setting aside said judgment. George E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Aitken, Glensor & Clewe and Aitken, Glensor, Clewe & Van Dine for Appellant.

J. P. Langhorne for Respondent.

WASTE, P. J.—This action was brought by plaintiff, the tenant, to have a lease declared rescinded, because it claimed to be deprived of a material part of the consideration, which had failed, so it is alleged, through the fault of the lessor. Judgment was entered for the defendant. There are two appeals, one (No. 2954) from the order denying plaintiff's motion to vacate the judgment, and the other (No. 2961) an appeal from the judgment. By stipulation, the appeals are considered together.

Defendant's assignor leased to plaintiff the premises, No. 50 Market Street, San Francisco, to be used as a ticket-office, for the term of eight years and eight months, commencing July 1, 1913, and ending February 28, 1922. At the time the negotiations for the lease were begun, a dividing wall of the building between the leased premises and a café and cigar-stand, occupying No. 48 Market Street, immediately adjoining, extended to a column at the street line. Before taking the lease, plaintiff insisted that the entrance be changed by cutting out two feet of this dividing wall next to the column from floor to ceiling, so that there would be two entrances, or vestibules, at No. 50 Market Street—one opening directly on Market Street, as before, and a new one opening into and across the adjoining premises, occupied by the cigar-stand. The lessor acceded to these requirements, and the change was made. The purpose of plaintiff in obtaining the second entrance was to gain the advantage of having its premises, displays, and advertising matter more readily seen by passers-by.

Plaintiff alleged, as ground for rescission, that defendant caused and permitted the tenant of the adjoining premises, No. 48 Market Street, to obstruct this passageway, or "open space," by hanging and displaying therein a café lunch-sign, two feet wide, and about six feet in height, during certain hours of the day. It claimed that by reason of such obstruction the consideration for its obligation under the lease failed in a material respect.

It was testified to by witnesses on behalf of plaintiff that on account of the position of the open passageway formed by the alteration the door and a window of the premises being thereby placed in better view of and more easily seen by people walking out Market Street from the ferry, this passageway and the view of the place thus gained through the open space were much more important in plaintiff's estimation than the regular entrance on Market Street and the Market Street windows. It was because of its advertising value that plaintiff insisted on having the vestibule made.

On January 28, 1918, plaintiff, with the consent of defendant, sublet the premises to be used as a photographic gallery, with the understanding that if the business was not a success, the subtenants might move out. When the subtenants inspected the premises before renting, there was no obstruction of the passageway. When it appeared on the first day of their tenancy, the photographic people complained to plaintiff because of its being there. Plaintiff requested defendant to remove the sign. Defendant did not do so, and after a few days the subtenant, complaining that the sign, when in position, rendered their premises dark, and deprived them of their advertising space, demanded of plaintiff the return of the rent that had been paid by them, and on its being refunded, they moved out.

The trial court found that the continued existence of said open space, and said right of way, and unobstructed view by passers-by, through and across said space, and of said portion of the corridor was and were a material part of the consideration for the obligation of plaintiff under said lease, and constituted a material inducement to plaintiff to enter into the same; that plaintiff would not have entered into the lease had it not included the right of such unobstructed view through and across said open space. It further found that the obstruction in the open space complained of by

plaintiff, and which consisted of a sign, advertising the lunch in the café at No. 48 Market Street, was placed by the subtenant of defendant within the interior boundaries of the vestibule and entrance from Market Street to the café; that the sign which was first placed in that position on the twenty-fifth day of January, 1918, was only maintained over and across the open space from about 11 o'clock to 2 P. M. of each day; that the sign was placed across the open space without the knowledge or consent of defendant, which had no knowledge of the fact until the fifth day of February, 1918, when plaintiff first complained to defendant about the matter; that defendant at first declined to take any action in the matter, but upon further investigation on the fifteenth day of February, 1918, caused the café people to remove the sign from the passageway, and thereafter it was kept entirely free from any obstruction whatever, and that plaintiff was fully notified that the obstruction had been removed from the open space, and that same was unobstructed.

Two days before receiving this notification, however, plaintiff had delivered its notice of rescission.

The court further found that the obstruction of the open passageway for a period not exceeding twenty-one days did not work a failure of any material or substantial part of the consideration to plaintiff for its lease, and that plaintiff had sustained no substantial or material injury or damage by reason of the obstruction, or by reason of any of the acts complained of. Judgment in favor of the defendant followed.

In explanation of its action in first declining to take steps to have the offending café sign removed from the passageway, after complaint made by plaintiff, the defendant, before plaintiff served its notice of rescission, took the ground that the opening in the partition wall was made after plaintiff took possession. After notice of rescission was served, and after investigating and finding that the opening existed at the time the lease to plaintiff was made, it took steps to cause its tenant at No. 48 Market Street to remove the sign complained of. It so notified plaintiff, and refused to rescind the lease or accept surrender or possession of the premises.

In support of the finding that no material or substantial part of the consideration to plaintiff failed, because of the obstruction of the open space by the café sign, respondent first points out that the lease was for a period of eight years and eight

months, and the obstruction continued but a portion of the day for about twenty-one days, being promptly removed after defendant had opportunity to look into the matter. Respondent in the next place relies upon the evidence introduced at the hearing, consisting of a number of photographs and diagrams, the testimony of a number of witnesses, and the view of the premises had by the court during the trial. While there was evidence on the part of plaintiff that but for the construction of the passageway leading into the vestibule at No. 48 Market Street, plaintiff would not have leased the premises, and that the existence of such passageway was of material benefit in the way of giving better light to the store, and affording a more open view of the place by pedestrians approaching from the east along Market Street, there was a strong counter-showing that the passageway in the east wall, two feet wide, afforded but little light, sight, and passageway into the place; that obstruction of this open space would only interfere with the view of persons coming from the east along Market Street, into a very small window, and the door of the store, until such time as they had passed the column on the edge of the sidewalk before referred to; that the space was too small for an entrance and was rarely used as such; that in addition to the small window and the door there are three other windows, one quite large, giving ample light and sight into the premises, and that the original vestibule to the store is five feet wide, ample for the purposes for which it was and is intended, and has always been used for the main entrance. Furthermore, before the place was occupied by the tenants, who moved out on account of the alleged injury caused by the display of the café sign, the premises had been empty for some time, and it was while the store was vacant that the café people first put up the lunch-sign on a board hung on hooks in the passageway. On the evidence, therefore, the lower court was justified in finding as it did that no material injury was done to plaintiff.

Appellant's chief contention is that the amply supported findings of the lower court to the effect that the existence of the open passage was a material inducement in the matter of the lease of the premises, and the other finding that by reason of the obstruction of the same passage in the manner complained of, plaintiff suffered no material detriment, are

diametrically opposed and so fatally inconsistent as to require a reversal of the judgment.

There can be no quarrel with appellant's statement of the law applying generally to the right of rescission in cases of contracts induced through fraud, mistake, and false representations. Those principles are not applicable to the case in hand. We cannot find that either fraud, mistake, or false representations entered into the inducements which led plaintiff to enter into the contract. The covenant on the part of the lessor, which, if not expressed in the lease, was implied, was that plaintiff should have the quiet enjoyment and possession of the premises during the continuance of the term. (Civ. Code, sec. 1927; *McDowell* v. *Hyman,* 117 Cal. 67, 70, [48 Pac. 984].) The act complained of, therefore, arises out of the interference by defendant with the enjoyment by plaintiff of the open space or passage under circumstances amounting, so appellant contends, to a forcible eviction from the premises.

[1] While the trial court has not found in so many words that there was no eviction from a substantial portion of the demised premises, it did find "that plaintiff has not suffered, or sustained, any material or substantial damage in any amount of money, or thing whatever, by reason of all, or any, of the acts complained of by plaintiff, and found by the court to have been done, or suffered to be done by defendant." This finding must be read with the other finding that defendant did not "fail or refuse to maintain said open space, and to allow plaintiff to have said right of way, and said unobstructed view through and across said open space, and said portion of said corridor, or allow said open space to be closed or obstructed to a height of more than six feet, or to any height or at all, or at any time, during the business, or other hours of each day," except "that such café sign was so placed by Mollenhauer & Co., on or about the 25th day of January, 1918, and was only placed and kept over and across said open space from about 11 o'clock A. M. until about 2 P. M. of each day," until "on said 15th day of February, 1918, said Mollenhauer & Co. did remove its café sign from said" open space "and did leave the same entirely free from any obstruction whatever." When so read together, we are of the opinion that the effect of the findings must be that plaintiff was not deprived of a *substantial* as distinguished from an insignificant or inconsequential portion of the demised premises, or, in

other words, deprived of the beneficial enjoyment of a *substantial* portion thereof. [2] If it was not, the rule that "it is not necessary that there should be an actual ouster, to constitute an eviction, for any act of the lessor which results in depriving the lessee of the beneficial enjoyment of the premises will constitute an eviction" (*Agar* v. *Winslow*, 123 Cal. 587, 593, [69 Am. St. Rep. 84, 56 Pac. 422]; *Skaggs* v. *Emerson*, 50 Cal. 3) does not apply. (*Kelly* v. *Long*, 18 Cal. App. 159, 163, [122 Pac. 832].)

[3] If the interference with plaintiff's possession was no more serious than the findings indicate (and the sufficiency of the evidence to justify the findings is well established in our minds), the act of defendant's tenant can amount to no more than a mere trespass. [4] And it is the settled rule that no acts of "molestation, even if committed by the landlord himself, or by a servant at his command, amount to a breach of the covenant, unless they are more than a trespass." (Taylor's Landlord and Tenant, 9th ed., sec. 309.) The defendant at all times during its long lease enjoyed possession and occupancy of these premises, including the use of the open space in the dividing wall, except for the trifling period during which it was interfered with by the act of defendant's tenant in displaying the café sign during lunch hours.

"It most certainly cannot be justly said that this act amounted to an eviction of the defendant from a substantial portion of the demised premises, and should, therefore, operate as a suspension or extinguishment of the rent. (Taylor's Landlord and Tenant, sec. 309; *Ogilvie* v. *Bull*, 5 Hill (N. Y.), 54.) [5] A mere passing trespass cannot operate to so oust a tenant of his possession as to amount to an eviction or a dispossession." (*Kelly* v. *Long, supra.*)

[6] The two findings of the lower court, therefore, are not inconsistent and contradictory. While the quiet enjoyment and use of the passageway may have been an inducement to plaintiff to enter into the lease, the act of defendant, as found by the court, was a mere trespass, which did not constitute such a breach of the implied warranty of the lease as to work a failure of consideration, or amount to an ouster or eviction from any substantial portion of the premises, causing plaintiff material injury or loss. (*McCormick* v. *Potter*, 147 Ill. App. 487, 491; *Voss* v. *Sylvester*, 203 Mass. 233, 240, [89 N. E. 241]; *French* v. *Pettingill*, 128 Mo. App.

156, 161, [106 S. W. 575]; *Wilkes-Barre Realty Co.* v. *Levy,* 114 N. Y. Supp. 713.)

[7] Plaintiff first complained to defendant about the offending sign on February 5th. Defendant on the next day declined to act, on the ground that the opening in the wall had been made after the lease entered into by plaintiff, and for the benefit of the tenant occupying No. 48 Market Street. On further investigation it caused the sign to be removed on February 15th, and on the 16th so notified the plaintiff, who had served its notice of rescission on the 14th. Appellant contends, therefore, that any act of the defendant, after notice of rescission given, was ineffectual to revive a lease theretofore rescinded by one of the parties. It contends that as it had determined to rescind the contract, and had given notice to defendant that the lease was ended by reason of its failure to comply with its terms, the termination of the lease was complete, and defendant could not by any act on its part alone renew the lease by taking away the sign and thus removing the cause of the alleged eviction. Undoubtedly such principle of law is applicable in cases in which the ouster or eviction is established. An examination of those cases, however, will disclose that under the facts of each the lessee or tenant had good cause for rescission. Such was the holding in *McCall* v. *New York Life Ins. Co.*, 201 Mass. 223, [21 L. R. A. (N. S.) 38, 87 N. E. 582, 584], cited by appellant. There the lease was for the entire fourth floor of a building for a term of five years. The landlord agreed to keep the elevators in the building in repair and running. During the first year of the tenancy the elevators caused trouble. The evidence showed that they stopped at all hours of the business day, and remained so for from fifteen minutes to one-half of the day, sometimes at the top and sometimes between floors, holding the passengers imprisoned and unable to get out. The tenant abandoned the premises and moved out. The landlord sued for rent, claiming under the written lease. The tenant defended on the ground that he had been evicted. The court found that the faulty elevator service rendered the building practically unfit for the defendant's business. In approving judgment for the defendant, on appeal, the court said: "Findings would have shown an eviction at the election of the lessee, and it might rightfully abandon the premises and decline to pay further rent. (Citing cases.) Since the

tenant was evicted by the landlord he is not obliged to return, even if the cause of the eviction be removed; and no right to rent exists except upon a voluntary return of the tenant.''

[8]    This case well illustrates the distinction between the cases relied on by appellant, and the cases already cited by us, which hold that an eviction must be established before the right to a rescission of the lease springs into being.

[9]    The trial court, in this case, having found against the plea of the plaintiff, that an eviction had occurred, was right in permitting the defendant to show the circumstances under which the trespass was abated.

The order by which the lower court denied plaintiff's motion for an order vacating and setting aside the judgment therein, and entering another and different judgment (No. 2954) is affirmed.

The judgment appealed from (No. 2961) is affirmed.

Richards, J., and Bardin, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 3, 1919.

All the Justices concurred.