[Civ. No. 3225.   Fourth Dist.   Dec. 3, 1943.]

ELEANOR WALMSLEY, Respondent, v. T. E. HOLCOMB, Appellant.

Wallace P. Rouse for Appellant.

Jerome L. Richardson for Respondent.

GRIFFIN, J.—This is an action wherein plaintiff and respondent, as one of the owners of certain land described in the complaint, and as the assignee of George E. Kellar and Emma L. Kellar, seeks to recover certain money as rent for the described premises.

On February 1, 1935, George E. and Emma L. Kellar, lessors, entered into a five-year written lease, of approximately 70 acres of land in Riverside County, with one J. H. Hinkle, as lessee, "yielding and paying therefor the rent of one-fourth of all crops grown" thereon and "to pay the rent above stated for such further time as the lessee may hold the same." Lessor reserved the right to use the pumps and water thereon to irrigate 30 acres adjoining. The usual covenants respecting default in payment and permission of lessor to assignment of the lease followed.

Apparently the Kellars owned and leased to defendant additional acreage than that mentioned in the written lease. Hinkle took possession under the lease and farmed the land for the years 1935 and 1936. Defendant Holcomb was one of the farm hands who worked for Hinkle on the Kellar ranch. Sometime in the latter part of December, 1936, due to the fact that Hinkle was working several other ranches and could not farm the Kellar ranch, Hinkle asked defendant Holcomb to take over his lease for the balance of its term. This was orally agreed upon by Holcomb and Kellar. The oral agreement was fully executed. Holcomb moved on to the ranch and farmed it for the years 1937 and 1938, and then moved off of the premises.

The written lease provided that the rental was to be one-fourth of all crops grown on the lands therein described. During the year 1937 Holcomb planted 100 acres to cotton, 9 acres to alfalfa and 10 acres to corn. Holcomb had charge of and sold all the crops and paid the rent of one-fourth of the proceeds of each of the crops to the Kellars with the exception of the cotton and cottonseed grown that year. During 1937 he raised $4,679.40 worth of cotton and cottonseed on the land and sold it to the California Cotton Oil Corporation (hereinafter called the Oil Co.). During the year 1938 Holcomb planted 48 acres to cotton, 4 acres of milo maize and hygeria and continued to farm 9 acres of alfalfa. That year he paid rent of one-fifth of the return from the alfalfa, milo maize and hygeria, but did not pay any rent from the proceeds coming from the cotton and cottonseed. During that

year he sold the cotton and cottonseed to the same corporation for a total of $3,321.85, making a total of $8,001.25 worth of cotton and cottonseed sold from the ranch during the two years involved. Plaintiff assignee claims that one-fourth of that amount or $2,000.31, was due under the terms of the lease and that Holcomb did not pay any part thereof except the sum of $554.32, which was advanced by the Oil Co. on bills owed by Kellar; that after deducting that amount there was a balance of $1,445.99 due as rent for the land under the terms of the lease.

On March 11, 1938, a written agreement was entered into between the Kellars and Holcomb to the effect that Kellar would reduce the crop rental from one-fourth to one-fifth, and that this was on condition that Holcomb pay Kellar the rental money which he owed him at that time. Prior to the commencement of this action the Kellars sold and assigned to plaintiff herein their claim against Holcomb for the money due for rent. Plaintiff filed this action which was tried before the court without a jury. After allowing defendant certain credits the court found generally in accordance with the above facts and rendered judgment in favor of plaintiff in the sum of $927.58, from which judgment this appeal is taken.

Defendant sets up certain defenses to the cause of action claiming first that he was not in possession of the property under the written lease herein described and was not bound by its terms by reason of the fact that there was no written assignment of the lease from Hinkle to him because under section 1698 of the Civil Code a contract in writing may be altered only by a contract in writing or by an executed oral agreement, and not otherwise. Plaintiff concedes that the evidence does not show that there was a written assignment of the lease made by Hinkle to Holcomb but on the other hand insists that the evidence establishes that there was an executed oral assignment of the lease and, therefore, the requirement of that section had been met.

■ There is no question but that the evidence clearly shows the defendant Holcomb assumed the obligations of the lease, took possession of the property, farmed it with the consent of Kellar, and that the lessee understood he was to farm the land in accordance with the terms of the written lease; that so far as the lessor and the lessee Holcomb were concerned, the oral agreement to that effect became fully

executed. Furthermore, the evidence shows that there was a voluntary acceptance of the benefits of the transaction on the part of defendant. Under section 1589 of the Civil Code a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all of the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting. ▪ At any rate, under the facts of this case, defendant should be estopped from raising the question as to whether there was a written assignment of the lease. The evidence shows that he accepted the benefits of the money coming from the crops, even to the extent of mortgaging the crops and using part of the money for his and his family's livelihood. Under section 3521 of the Civil Code "he who takes the benefit must bear the burden." (See, also, *Lopizich* v. *Salter*, 45 Cal.App. 446 [187 P. 1075]; and *Saks* v. *Knapp Investment Co.*, 105 Cal.App. 280 [287 P. 375].) We need to refer only to a portion of the testimony to support these conclusions.

George E. Kellar testified that in January, 1937, he conversed with Holcomb about the Hinkle lease; that Holcomb said: "Well,—he was going to take over the balance of the term of the lease . . . and fulfill the contract on it . . . just take . . . Mr. Hinkle's place"; that "I said O.K."; that pursuant to that conversation Holcomb took possession of the property; that Hinkle said that he had promised to and did let Holcomb "take over the lease."

Holcomb testified that Hinkle, Kellar and himself had an agreement whereby he was to "start farming Mr. Kellar's ranch"; that he knew Hinkle had a lease; that they talked about his "taking it over"; that he understood the agreement, however, to be "a share crop agreement," i. e., an agreement to take one-fourth of the *net profits* or proceeds rather than a one-fourth crop rental; that Kellar agreed to fix the well so he could irrigate his crop; that in 1937 he planted about 100 acres and had to abandon 20 acres for lack of sufficient water; that in 1938 he planted only 48 acres of cotton; that on February 6, 1937, he executed a demand promissory note and gave as security a chattel and crop mortgage to the California Cotton Credit Company (hereinafter called the Credit Co.) on his farming equipment and crops to be raised, to finance his venture. The Kellars, as owners of the property, signed a waiver and consented that their lien or claim to the chattels or crops should be subject and inferior to the Cotton Co.'s rights under the mortgage.

The evidence shows that advances were made to Holcomb on the account by the Cotton Co. which included a family allowance of $50 per month for six months; cost of a tractor furnished Holcomb in the sum of $500; interest on the mortgage; title search cost; fertilizer furnished to Holcomb and also to Kellar; money advanced to workmen for repair of the well; an automobile trailer for Holcomb; and many more such items. The records of the Oil Co. show that the advances for that year exceeded the income from the sale of cotton.

Defendant testified that he did not pay to Kellar any amount received from the sale of cotton because he received no net profit therefrom and that under the claimed crop sharing agreement he was not obligated so to do.

The trial court found to the contrary and determined that defendant was holding as a lessee in accordance with the terms of the written lease as modified and not as a share cropper, i. e., that defendant originally agreed to pay a one-fourth crop rental and such agreement was later modified so that he was then obligated to pay a one-fifth crop rental. The evidence fully supports such a finding. (*Walls* v. *Preston*, 25 Cal. 59, 60; *Harrelson* v. *Miller & Lux, Inc.*, 182 Cal. 408 [188 P. 800]; *Morris* v. *Iden*, 23 Cal.App. 388 [138 P. 120]; *In re Okahara*, 191 Cal. 353 [216 P. 614]; *Clarke* v. *Cobb*, 121 Cal. 595 [54 P. 74].)

Defendant next argues that there was no valid assignment of Kellars' claim to plaintiff because the assignment did not mention plaintiff's name as assignee; that it was in a different amount from that claimed in the complaint or as found by the court, and did not refer to the written lease under which it was claimed the amount became due. We see little merit to this argument. The assignment is in the following language:

"For valuable consideration, I hereby sell, assign, transfer and convey all of my right, title and interest in and to that certain claim against J. E. Holcomb and his wife in the sum of $1283.53, with full power to sue for, collect and receive the same.

"GEORGE E. KELLAR.
"EMMA L. KELLAR."

In respect to this assignment the witness George E. Kellar testified that he did assign all of his right, title and interest

in any rentals due under the lease to plaintiff and that he and his wife signed the above-quoted assignment.

The assignment, not naming the assignee, but which was signed by the assignors and delivered to the assignee, being in rightful possession of her at the time the action was filed, was prima facie evidence of her right of ownership of the claim. (Sec. 1458, Civ. Code; sec. 1052, Civ. Code; *Lucas* v. *Pico*, 55 Cal. 126; *Linder Hardware Co.* v. *Pacific Sugar Corp.*, 17 Cal.App. 81 [118 P. 785, 789]; *Curtin* v. *Kowalsky*, 145 Cal. 431 [78 P. 962].) The fact that the amount claimed in the assignment exceeded the amount found due by the court did not affect its validity. (Sec. 368, Code Civ. Proc.)

In *McIntyre* v. *Hauser*, 131 Cal. 11, 14 [63 P. 69], the court said:

"In order to constitute an equitable assignment of a debt, no express words to that effect are necessary. If from the entire transaction it clearly appears that the intention of the parties was to pass title to the chose in action, then an assignment will be held to have taken place." (See, also, *Goldman* v. *Murray*, 164 Cal. 419, 422 [129 P. 462].)

The evidence is sufficient in all respects to constitute a valid assignment under the law and to enable plaintiff to maintain this action.

Defendant next contends that he was evicted from a portion of the premises here involved by failure of Kellar to install a new pump and to provide sufficient water for the irrigation of the crops planted by the defendant, and was therefore not liable for rents during such partial eviction, citing 15 Cal.Jur. pages 681-682, sections 91-92.

Although no such defense is pleaded in the answer, suffice it to say the defendant remained in possession of all of the land during the years 1937 and 1938. The trial court, in effect, found that under the evidence there had been no partial eviction from any substantial portion of the leased premises so as to entitle defendant to remain in possession of the whole, rent free. The case of *Veysey* v. *Moriyama*, 184 Cal. 802 [195 P. 662, 20 A.L.R. 1363], is a complete answer to this contention.

This sufficiently disposes of such points as require consideration.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.