[Civ. No. 19758. Fourth Dist., Div. Two. Aug. 24, 1979.]

DUSSIN INVESTMENT COMPANY et al.,
Plaintiffs and Respondents, v.
ROGER BLOXHAM, Defendant and Appellant.

**COUNSEL**

Rutan & Tucker, Stuart T. Waldrip, William B. Ellis, Bergland & McLaughlin and David P. Bergland for Defendant and Appellant.

Cecil C. Wright for Plaintiffs and Respondents.

**OPINION**

**KAUFMAN, Acting P. J.**—Insofar as this appeal is concerned the action below was one for unlawful detainer by a sublessor against a sublessee for possession of the premises, forfeiture of the sublease and unpaid rent together with interest and costs. The sublessee appeals, contending that as a matter of law the evidence demonstrates that the sublessor had partially, actually evicted him and that, therefore, no rent was owed.

The relationship between the parties and the litigation between them are somewhat complex. Plaintiffs Dussin Investment Company and George T. Dussin are the sublessors of defendant Roger Bloxham, but Dussin Investment Company was simultaneously also the sub-sublessee of Bloxham as to a portion of the premises. (We shall refer to Dussin and Dussin Investment Company collectively as Dussin or sublessors; defendant Bloxham will be called Bloxham or sublessee.) Two actions were pending in the trial court and were consolidated for trial. The appeal is from the judgment in only one. In addition, there was a prior unlawful detainer action between the parties that proceeded to judgment. While no detailed history of the problems between the parties is necessary, it is helpful in resolving the issues on appeal to be familiar with the relationship between the parties and the sequence and nature of the lawsuits between them.

The property involved is owned in fee by Mr. and Mrs. Swanson and is located at 223 21st Street, Newport Beach. The property has a total land area of some 14,000 square feet and has water frontage on Newport Bay where boats can be tied to slips to be moved in and out of the water and brought onto land for repair and maintenance work. The parcel is irregularly shaped. It is approximately 159 feet in depth and varies from 106 feet in width at the widest point to 66 feet in width at the waterline. On the rear portion (away from the waterfront) of the property and adjoining 21st Street is a two-story office building. Each floor approximates 1,200 square feet.

In February 1967, Mr. and Mrs. Swanson leased the entire property to Croft and Neville Marine Contractors, Inc. for a period of 10 years with an option to renew for 5 years. Under the heading "USE OF LEASED PREMISES" the master lease provides: "The property leased is to be used for a marine contracting business and for any lawful purpose." Croft and Neville Marine Contractors, Inc. subsequently became Penhall Marine, Inc. and on April 21, 1970, subleased a portion of the property for a term ending February 10, 1977, with an option to renew for an additional five years. The portion of the property subleased was the entire property except the second floor of the building and a portion of the first floor of the building designated as a "15' by 20' [area] on the lower floor in the Northeast corner of the building." Also reserved to Penhall Marine, Inc. were six parking spaces and full rights of access to and from the premises retained. The sublease provided that the sublessee might assign or further sublease the premises but gave the sublessor the right of first refusal as to any such assignment or sublease.

On May 31, 1974, the sublessee's interest in this sublease was assigned to defendant Bloxham. On September 10, 1974, Bloxham sub-subleased to Dussin Investment Company approximately 10,000 square feet of open paved area for a term ending December 31, 1976, to be used as a parking lot for a restaurant known as the Old Spaghetti Factory.

On March 1, 1975, Penhall Marine, Inc., now named Penhall Company, assigned the master lease to Dussin Investment Company and George T. Dussin. Thus, plaintiffs Dussin Investment Company and George T. Dussin became the sublessor of defendant Bloxham, but Dussin Investment Company was also a sub-sublessee of defendant Bloxham with respect to the restaurant parking lot sub-sublease.

When Bloxham acquired the sublease at the end of May 1974, the only access to the building was to the front (toward the water) from the parking area. Sometime thereafter, apparently in early 1975, Bloxham installed a sliding glass door in a wall of the first floor, which afforded him access to 21st Street. Notwithstanding the reservation of the use of that space to Penhall Marine, Inc. in the sublease, Bloxham was using the storage area as a part of his workshop and for the storage of some of his personal property until about August 1, 1975.

On or about August 1, 1975, Dussin, who had succeeded to the rights of Penhall Marine, Inc. in the master lease including the right to use the "15′ by 20′" storage area on the ground floor of the building, apparently determined to use that portion of the building. Believing they were entitled to the use of 300 square feet and apparently believing the partitioned area encompassed some 135 square feet, Dussin removed the partitions and enlarged the storage area by some 165 square feet and took possession of the enlarged area.[1] In the process, the sliding glass door opening on 21st Street previously installed by Bloxham was blocked off.

Meanwhile on July 15, 1975, Dussin filed suit against Bloxham (case No. 231560) for damages, alleging primarily breaches by Bloxham of the restaurant parking lot sub-sublease. Bloxham cross-complained, asserting a number of claims for money damages including one based on Dussin's enlargement and possession of the storage space on the first floor of the building.

---

[1]As it turned out the trial court found the actual area of the original "15′ by 20′" area to be 170 square feet, so that by enlarging the area by 165 square feet, Dussin actually took possession of an area of some 335 square feet.

Pending the first action, Dussin, as assignee of the master lease, instituted an unlawful detainer action against Bloxham for nonpayment of rent on December 16, 1975. Although the enlargement of the storage area and Dussin's taking possession thereof had occurred some four and a half months earlier, Bloxham did not assert any defense based on those facts in the unlawful detainer action, and judgment was rendered in favor of Dussin for unpaid rent and interest in excess of $10,000. Forfeiture of the sublease was denied because Dussin's notices terminating the tenancy were defective. The judgment was satisfied by Bloxham on February 25, 1976.

Bloxham thereafter paid to Dussin the rent due under the sublease until July 1976, when he again defaulted in payment of part of the July rent and all of the August and September rent. Based on these defaults in the payment of rent, on September 10, 1976, Dussin filed the instant unlawful detainer action (case No. 253044) seeking possession of the premises, termination of the sublease and recovery of the unpaid rent. This time Bloxham asserted that Dussin's conduct in enlarging and taking possession of the storage area constituted a partial, actual eviction negating Bloxham's obligation to pay rent under the sublease.

Dussin's action for damages (231560) in which Bloxham had cross-complained for damages on account of Dussin's enlargement and taking possession of the storage area was consolidated for trial with the instant unlawful detainer action (253044). The matters were tried to the court without jury. In the damage action the court determined some matters favorably to Dussin and some matters favorably to Bloxham. Pertinent to this appeal, the court found that the reference in the sublease to the "15' by 20'" area in the sublease was intended to identify a space within certain partitions on the first floor at the time the sublease was signed, which actually comprised only about 170 square feet of space rather than 300 square feet as indicated by the dimensions specified; that Bloxham did not consent to Dussin's enlargement of the area and occupation of the enlarged storage area; that as a result of Dussin's actions the reasonable rental value of the premises to which Bloxham was entitled under the sublease was lowered by $200 a month commencing August 1, 1975; and that Dussin's enlarging and occupying the area were not done maliciously or in bad faith and did not justify punitive damages. Accordingly, the judgment in the damage action included an award to Bloxham for the diminution in rental value of the leased premises in the amount of $5,200 plus $6.67 per day until Dussin's wrongful possession of the enlarged

storage area should cease. No appeal was taken from that judgment, and it has become final.[2]

In the unlawful detainer action (253044) the court found that Dussin had complied with all the procedural requirements; that Bloxham had failed to pay the rent due under the sublease as claimed;[3] and that Dussin's enlargement of the storeroom by 165 square feet was not consented to by Bloxham. The court concluded, however, that Dussin's conduct in so doing did not amount to a partial, actual eviction of Bloxham and was not a defense to the unlawful detainer action. Accordingly, judgment was rendered in favor of Dussin for forfeiture of the sublease, possession of the premises and the recovery of unpaid rent, taxes and interest exceeding $19,000. The appeal is from that judgment.[4]

Bloxham's overall contention on appeal is that Dussin's enlarging and taking possession of the enlarged storage area amounted to an actual, partial eviction of Bloxham as a matter of law and constitutes a full defense to Dussin's unlawful detainer action. Dussin contends that to constitute a complete defense to an action for unlawful detainer or rent, an actual eviction must have been from a "substantial" portion of the premises; that the trial court found in effect that Dussin's conduct did not constitute an actual eviction of Bloxham from a "substantial" portion of the premises; that the trial court's finding is supported by substantial evidence and that the judgment must therefore be affirmed. Dussin's position is sound.

Bloxham is correct that in appropriate circumstances an actual, partial eviction of a tenant by a landlord will relieve the tenant from liability for future rents so long as the eviction continues even though the tenant remains in possession of the balance of the premises. (*Skaggs* v. *Emerson,* 50 Cal. 3, 6; *Giraud* v. *Milovich,* 29 Cal.App.2d 543, 547-549 [85

[2]At oral argument counsel for Bloxham indicated Bloxham's willingness to stipulate to forgo enforcement of this award should he prevail on this appeal in his contention that Dussin's conduct constituted a complete defense to the unlawful detainer action.

[3]The prescribed rent at the time the unlawful detainer action was filed was $1,210 per month in addition to specified real property taxes and utility charges. However, while the case was pending, on March 1, 1977, pursuant to the sublease, the prescribed rent increased to $1,767 monthly in addition to the specified taxes and charges. During the pendency of the action, Bloxham paid no rent until required to do so to obtain a stay of execution on the judgment on appeal.

[4]Bloxham was granted a stay of execution of the unlawful detainer judgment pending appeal upon posting an undertaking. In addition the parties stipulated pending appeal to an offset of their respective money judgments without prejudice to their respective positions on appeal.

P.2d 182]; see *Camarillo* v. *Fenlon,* 49 Cal. 202, 207; *Slater* v. *Conti,* 171 Cal.App.2d 582, 585 [341 P.2d 395]; *Kelley* v. *Long,* 18 Cal.App. 159, 163-164 [122 P. 832].) However, the tenant's obligation to pay rent is not thus suspended unless the tenant has been actually evicted from a *substantial* portion of the demised premises. (*Skaggs* v. *Emerson, supra; Giraud* v. *Milovich, supra,* 29 Cal.App.2d at pp. 548-549; *Kelley* v. *Long, supra;* cf. *Walmsley* v. *Holcomb,* 61 Cal.App.2d 578, 584 [143 P.2d 398]; *North Pac. S. S. Co.* v. *Terminal Inv. Co.,* 43 Cal.App. 182, 188-189 [185 P. 205].)

■ In support of his contention that the portion of the premises from which he was evicted was "a substantial portion of the demised premises" as a matter of law Bloxham asserts, first, that "a substantial portion of the demised premises" as used in the cases imports any portion of the premises beyond what would be considered de minimus and, secondly, that in determining whether the portion of the demised premises from which the tenant has been evicted is "substantial," no consideration is to be given to the extent of actual interference with the tenant's use and enjoyment of the premises, because those considerations are germane only to the doctrine of constructive eviction as distinguished from actual, partial eviction. As authority for these propositions, Bloxham relies upon *Skaggs* v. *Emerson, supra,* 50 Cal. 3, *Giraud* v. *Milovich, supra,* 29 Cal.App.2d 543, and especially *Kelley* v. *Long, supra,* 18 Cal.App. 159. He also cites a considerable number of decisions from the State of New York.

*Kelley* v. *Long, supra,* does not support the propositions advanced by Bloxham. In pertinent part the court said: "But we think the rule as stated does not apply where it does not appear that the interference has resulted in depriving the lessee of a *substantial* as distinguished from an insignificant or inconsequential portion of the demised premises, or, in other words, in depriving him of the beneficial enjoyment of a *substantial* portion of the premises." (18 Cal.App. at pp. 163-164, original italics.) It is true that in attempting to give definitive meaning to the word "substantial," the court contrasted that adjective with "insignificant" and "inconsequential." But in its statement the court related the question of substantiality to the tenant's being deprived of beneficial use and enjoyment, and in the succeeding paragraph the court noted that the water appurtenant to the property had been wrongfully taken on only one occasion and resulted in damages of only $40. The court concluded that the wrongful taking "was inconsequential and *did not disturb the defendant's beneficial enjoyment of a substantial portion of the demised*

*premises. . . .*" (18 Cal.App. at p. 164; italics added.) The conclusion was inescapable.

Similarly, *Giraud* v. *Milovich* does not support Bloxham's position. The court concluded that "[t]he evidence sufficiently supports the finding that there was a substantial partial eviction. . . ." (29 Cal.App.2d at p. 549.) But an examination of the evidence considered by the court in reaching that conclusion is most revealing; it related largely to the extent of the interference with the tenant's use and enjoyment of the leased premises as a gasoline service station. The leased premises had dimensions of 100 feet by 50 feet. The portion of the premises from which the tenant had been evicted was a strip fronting on the highway 100 feet long and 20 feet deep, hardly de minimus. Nevertheless, the evidence referred to by the court as being sufficient to support the finding of substantiality was summarized by the court as follows: "The evidence discloses that it would be necessary to make some extensive fill to the rear portion of the remaining parcel of the leased premises before it would be usable as a filling station; that respondent was compelled to move three large one-thousand-gallon gasoline tanks from the strip taken by the state and that thereafter he had no available space on the property to place them. . . ." (29 Cal.App.2d at pp. 545-546.) If the propositions espoused by Bloxham were correct there would have been no occasion for the court to discuss and rely upon those facts.

It is true that in *Skaggs* v. *Emerson* the leased premises consisted of hotel buildings, cottages, corrals, half a barn, a 10-acre field, a garden and an orchard and that the court held an allegation that the landlord wrongfully evicted the tenant of a certain cottage called the " 'Hewitt Cottage' " was sufficient to raise the defense of actual, partial eviction. But the case is singularly unhelpful in shedding light on the substantiality requirement of the rule. The meaning of "substantial" was not discussed. Moreover, the case was a pleading case, and the court could certainly not say as a matter of law that the tenant's eviction from " 'Hewitt Cottage' " was not an eviction from a substantial portion of the demised premises. It is also noteworthy that although the court suggested in its opinion that "no recovery could be had upon the covenant to pay rent" (50 Cal. at p. 6), the portion of the answer held erroneously stricken by the trial court "alleged that the defendant had sustained one hundred and ninety dollars damage, and . . . asked to set it off against the rent." (50 Cal. at p. 4.)

We do not feel it necessary to discuss the cited New York cases except to say that so far as we have discerned they contain no meaningful discussion of "substantial." In this regard we note that in the only decision of New York's highest court to which we have been cited, the court did not include in its statement of the rule any substantiality requirement. (See *Fifth Ave. Bldg. Co.* v. *Kernochan* (1917) 221 N.Y. 370 [117 N.E. 579.)[5] ▓ We are persuaded by our analysis of the California cases that a tenant is not relieved entirely of the obligation to pay rent by an actual, partial eviction unless the eviction is from a substantial portion of the premises and that in determining the question of substantiality, the court may and should consider the extent of the interference with the tenant's use and enjoyment of the property. These conclusions are particularly appropriate where, as here, the eviction was not malicious or in bad faith but, rather, resulted from a tenable, though mistaken, interpretation of an ambiguous lease provision. While the extent of the interference with the tenant's use and enjoyment of the property is the prime consideration in constructive eviction cases (see, e.g., *Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 P. 662, 20 A.L.R. 1363]), our analysis of the actual, partial eviction cases discloses that the courts have also given consideration to that factor in determining substantiality. Appropriately so, for it is fairly apparent that the doctrine of constructive eviction evolved from the law relating to actual, partial eviction. (See Note, *Partial Constructive Eviction: The Common Law Answer in the Tenant's Struggle for Habitability* (1970) 21 Hastings L.J. 417, 420-421.) Indeed, the courts have evinced some difficulty in marginal factual circumstances in determining whether a claimed eviction should be treated as a partial, actual eviction or a constructive eviction. (Cf., e.g., *McAlester* v. *Landers,* 70 Cal. 79, 82 [11 P. 505]; *Slater* v. *Conti, supra,* 171 Cal.App.2d at pp. 585-586; *Giraud* v. *Milovich, supra,* 29 Cal.App.2d at p. 547; *Walmsley* v. *Holcomb, supra,* 61 Cal.App.2d at p. 584; *Tregoning* v. *Reynolds,* 136 Cal.App. 154, 156-158 [28 P.2d 79]; *Kelley* v. *Long, supra,* 18 Cal.App. at pp. 163-164.)

Bloxham's final argument is in actuality a challenge of the trial court's assessment of the evidence. He asserts that the evidence establishes that he was actually evicted from a substantial portion of the demised premises even if the qualitative factors we have mentioned were properly

[5]We note that an early decision of the California Supreme Court referring to the rule also omits any reference to a substantiality requirement. (See *Camarillo* v. *Fenlon, supra,* 49 Cal. at p. 207.) Apparently some jurisdictions used to or presently follow the rule that "if the tenant loses the benefit of the enjoyment of any portion of the demised premises, by the act of the landlord, the rent is thereby suspended." (See Annot., 20 A.L.R. 1369, 1373, citing *Upton* v. *Townend* (1855) 17 C.B. 30, 139 Eng. Reprint, 976.)

considered by the trial court in assessing the substantiality of the eviction. He points to the fact that the sliding glass door he had installed giving him access to 21st Street was blocked off and claims this interfered with plans he had to sub-sublease a portion of the ground floor for use as an antique shop. He further points out that the 165 square feet from which he was wrongfully evicted amounts to 16 percent of the area of the ground floor and that the $200 per month by which the court found the rental value of the premises was diminished amounted, according to his calculations, to 17 percent of the monthly rent.

Had the trial court found that Bloxham had been evicted from a substantial portion of the premises, we should have no difficulty finding in some of these facts substantial evidence to support that finding. However, the trial court found in substance to the contrary. ■ The question whether the tenant has been evicted from a substantial portion of the premises is a factual one. (See *Giraud* v. *Milovich, supra,* 29 Cal.App.2d at p. 549; cf. *North Pac. S. S. Co.* v. *Terminal Inv. Co., supra,* 43 Cal.App. at pp. 186-187.) ■ And the evidence is ample to support the trial court's finding that Bloxham was not evicted from a substantial or significant portion of the demised premises.

First, the 165 square feet in controversy amounts to only 1.17 percent of the 14,000 square feet of space subleased to Bloxham. Secondly, there was a good deal of evidence that Bloxham's use of the property was primarily for yacht brokerage, repair and maintenance and as a parking lot; that he was using the storage area and the area behind it for a workshop and the storage of his own personal property; that his use of the property did not change after the sliding glass door had been installed; and that Dussin's occupancy of the 165 feet of space to which they were not entitled had no noticeable effect upon Bloxham's use of the property. The evidence that Bloxham might be able to sub-sublease a portion of the first floor for use as an antique shop was weak and unpersuasive. It consisted of the testimony of a Mr. Felch about several discussions he had concerning his possible interest in renting a portion of the first floor for such use. Only one of such discussions was had with Bloxham; the discussion was entirely inconclusive and, in fact, there was never any discussion of the rental price. In addition, Bloxham would have been required by the provisions of the sublease to give Dussin the right of first refusal with respect to any such sub-subletting, and there was no evidence that Bloxham ever indicated to Dussin that he intended to sub-sublet a portion of the ground floor.

Perhaps most importantly, there was a great deal of evidence before the trial court persuasively indicating that Bloxham himself did not consider the eviction substantial or significant. At no time did Bloxham notify plaintiff that the reason he was discontinuing the payment of rent was related to Dussin's acts with respect to the storage area, nor did Bloxham ever offer to pay the rent on condition that Dussin would restore him to possession. When Dussin filed the first unlawful detainer action some four and a half months after they enlarged and took possession of the storage area, Bloxham did not attempt to assert any defense or offset on the basis of Dussin's conduct with respect to the storage area. Further, when judgment in that action was rendered in favor of Dussin, including an award for unpaid rent for the entirety of the leased premises, Bloxham satisfied the judgment.[6] Thereafter, for a number of months Bloxham paid without objection the rent specified by the sublease for the entirety of the leased premises. The claim that Dussin's occupancy of the enlarged storage area relieved Bloxham of any obligation to pay rent was not asserted until after Dussin filed the instant unlawful detainer action.[7] Bloxham's conduct with respect to Dussin's enlargement and occupancy of the storage area gives rise to a reasonable inference that Bloxham himself considered the eviction insubstantial or insignificant, and itself provides support for the trial court's finding to the same effect.

■ "The weight to be given the evidence is, of course, a matter committed exclusively to the trial court. When a finding of the trial court is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429

[6]Whether or not judgment in the first unlawful detainer action might have had some res judicata effect upon the litigation under review (cf. *Slater* v. *Conti, supra,* 171 Cal.App.2d at p. 586), we are not called upon to decide, since, although the trial court took judicial notice of the file in the prior unlawful detainer action, Dussin apparently did not assert any claim of res judicata.

[7]Whether or not Bloxham might have waived the right to assert the partial actual eviction as a total defense to an action for the payment of rent (as contrasted to a partial defense or right to claim resulting damages) based on this conduct and his cross-complaining for damages on account of the eviction in Dussin's damage action relating to the parking lot sub-sublease (231560) (cf. *Camarillo* v. *Fenlon, supra,* 49 Cal. at p. 207), we are not called upon to decide, since the issue was apparently not specifically raised in the trial court.

We do observe that since Bloxham has proceeded to final judgment in action 231560 on his cross-complaint for damages resulting from Dussin's enlargement of and occupying the storage area, his successful assertion of these same facts as a complete defense to his obligation to pay rent would constitute a double recovery of sorts. It is apparently in recognition of this fact that Bloxham has offered to stipulate to forgo the benefits of the damage award should he prevail in this appeal (see fn. 2, *ante*).

[45 P.2d 183]; *Wittenbach* v. *Ryan,* 63 Cal.App.3d 712, 716 [134 Cal.Rptr. 47].) Where the evidence is conflicting or gives rise to conflicting inferences the findings of the trial court will not be disturbed on appeal. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)" (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group,* 76 Cal.App.3d 1031, 1053 [143 Cal.Rptr. 415].)

The judgment is affirmed.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied September 19, 1979, and appellant's petition for a hearing by the Supreme Court was denied November 1, 1979.