[Civ. No. 2111.   Fourth Appellate District.—December 6, 1938.]

ADELAIDE F. GIRAUD, Appellant, v. MIJO MILOVICH, Respondent.

John T. Boynton for Appellant.

Robert Richards for Respondent.

GRIFFIN, J.—The appellant, Mrs. Adelaide F. Giraud, brought this action of unlawful detainer against her tenants, P. M. Pocock and Mijo Milovich, the respondent herein, for

failure to pay rent. The action was apparently abandoned as to Pocock, but was defended by Milovich, the tenant then in possession. There is some evidence to the effect that Pocock sold his interest to Milovich or at least agreed to a sale, soon after they took possession.

Milovich defended the unlawful detainer action upon the theory that he had been previously evicted by the landlord from the substantial portion of the leased premises and was accordingly relieved from the obligation to pay rent.

The parties acquired their respective interests in the property as follows: Felician Giraud, the original lessor, executed to P. M. Pocock a lease of the premises in question. It was a rectangular piece of property located an eighth of a mile south of Bishop, California. It had a 100-foot frontage on U. S. highway No. 395 and a depth of about 50 feet.

The lease was for a term of five years from March 25, 1933, at a rental of $25 per month. Pocock, on April 25, 1933, assigned the lease to himself and Mijo Milovich. The lease and assignment were duly recorded May 5, 1933.

The respondent entered into actual possession of the premises on April 25, 1933, on which he erected and maintained a gasoline service station, and continued in actual possession of all of it except a strip fronting on the highway which had a length of 100 feet and a depth of 20 feet, from which the court found he had been evicted.

After making the above-described lease, Felician Giraud, the original lessor, on October 31, 1933, conveyed a right of way to the state of California for highway purposes consisting of a strip of the leased premises 100 feet long by 20 feet deep where the property adjoined the U. S. highway No. 395, for the sum of $151.50.

Felician Giraud, on the same day, executed a deed to the remaining portion of the leased property to Alfred and Adele Giraud. Alfred Giraud conveyed his interest in the premises to appellant about July, 1934, prior to the commencement of this action. December 18, 1933, Alfred and Adele. Giraud signed a quitclaim deed to the described 20-foot strip of property, conveying it to the state of California for highway purposes.

The deed from Felician Giraud contained the following: "And I, the said grantor, do hereby waive all claim for any and all damages or compensation for and on account of the

location, establishment and construction of said state highway and do grant to the grantee the right to remove any and all trees, growths and road-building material within said right of way, and the right to use the same in such manner as the said grantee may deem proper, needful or necessary in the construction, reconstruction or maintenance of said state highway,'' etc. The deed from Alfred and Adelaide F. Giraud contained the following: ''and we—— release —— and discharge —— for ourselves —— grantees and —— assigns ——, the state —— from any —— suits —— damages —— or claims —— we now have —— by reason of the location or construction —— of the state highway —— and to all damages to the remaining section of our said lands by reason of the severance therefrom of the parcel —— conveyed and quit-claimed''. The state went into possession of the 20-foot strip of land in question and forcibly ousted and evicted him therefrom, thus leaving him only the 30 feet in depth of the original 50 feet upon which to conduct and operate his business. The court found that Alfred and Adelaide F. Giraud were at all times the owners of the real property leased, although Felician Giraud held the legal title in trust for them.

From the record, which is woefully lacking in clarity, it appears that respondent testified that he had no knowledge of the execution of the deeds to the state until the authorities were about to enter and widen the highway, which date was around November, 1934. About this time respondent stated to appellant that he would be satisfied to let her sell this strip to the state and allow it to enter into possession if she would replace the strip so taken from her adjoining property, and raise the gas station, pumps and tanks. He testified that he did not know that the parcel had theretofore been sold to the state. However, the evidence is conflicting and there is in evidence an encroachment permit dated April 8, 1933, issued to P. M. Pocock, authorizing certain work to be done in reference to an approach to the oil station.

The evidence discloses that it would be necessary to make some extensive fill to the rear portion of the remaining parcel of the leased premises before it would be usable as a filling station; that respondent was compelled to move three large one-thousand-gallon gasoline tanks from the strip taken by the state and that thereafter he had no available space on the

property to place them, and was forced to store them on a portion of an unopened adjoining street.

There is considerable evidence indicating that the landlord and the representatives of the state were busily engaged in an endeavor to appease the tenant before moving upon the property. After the state took possession appellant made no attempt to secure for respondent, by lease, any additional ground and refused to raise the gas station, etc., whereupon respondent offered to do this work and withhold the cost from the monthly rental, which was refused. He also offered to sell his equipment and interest to appellant at considerable discount but appellant declined, whereupon respondent refused to pay further rent for the premises.

The rent was ordinarily paid to appellant, but she claimed none had been paid by Milovich or Pocock since November, 1934. The trial court found that Felician Giraud, Alfred Giraud and appellant Adelaide F. Giraud ousted, evicted and dispossessed the respondent from a substantial portion of the premises leased, to wit, the 20-foot strip above described, and that such eviction still continued; that the rental value of that portion of the premises from which he had not been ousted, at the time of the signing of the findings, was 82+c per day; that appellant had not sustained any damage in any sum by reason of the detention of the premises and accordingly denied appellant the relief prayed for in her complaint.

The appellant advances the contention that the lease, being for more than one year and duly recorded, and the lessor-owner having made an outright deed to a portion of the premises, that this only constituted a severance of the reversionary interest in the property and did not amount to an eviction by the lessor, and constituted no wrong to the tenant, and that therefore the law will apportion the rent. (Citing 16 R. C. L. 916, note 8; 16 R. C. L. 945, note 8; *Dreyfus* v. *Hirt,* 82 Cal. 621, 627 [23 Pac. 193]; *Linton* v. *Hart,* 25 Pa. 193 [64 Am. Dec. 691].) She contends further that the state evicted the tenant, if there was an eviction, and that therefore the tenant is still required to pay the rent to the landlord for the proportionate value of that part of the land which the tenant still retained, and for failure to pay such rent the tenant should be dispossessed in an unlawful detainer action. (Citing sec. 1935, Civ. Code.)

Respondent answers this contention by claiming that the two deeds to the state gave the grantee full and every power and authority of immediate possession, which was its warrant for entering in and upon the premises, for taking possession thereof, and for ousting and evicting the respondent therefrom; that by virtue of this authority and the representations made it ousted the tenant.

It is often difficult to determine what acts will constitute an eviction. �In It is settled, however, that there need not be actual dispossession of the tenant from the leased premises. An eviction may be actual, as where there is a physical expulsion, or it may be constructive as where, though amounting to an eviction at law, the tenant is not deprived of actual occupancy. Any disturbance of a tenant's possession by a landlord or by someone acting under his authority, whereby the premises are rendered unfit for occupancy for the purpose for which they are demised, or the tenant is deprived of the beneficial enjoyment of the premises, amounts to a constructive eviction. (*Riechhold* v. *Sommarstrom Inv. Co.*, 83 Cal. App. 173 [256 Pac. 592]; *Hopkins* v. *Murphy*, 233 Mass. 476 [124 N. E. 252, 13 A. L. R. 816].) In 16 R. C. L. 955, sec. 463, we find the following:

"Minority Rule: It is the rule in a few jurisdictions that when a landlord enters and dispossesses the tenant of a part of the premises a discharge of the rent will not result unless the tenant surrenders or abandons the possession entirely and that if the tenant remains in possession the rent is discharged only *pro tanto* to the extent of the value of the use and occupation of the part of the premises of which the tenant is dispossessed."

From 16 R. C. L., p. 953, sec. 461, we quote the following, together with some of the supporting authorities from the footnotes:

"Partial Eviction by Landlord: General Rule. When the eviction is of a part of the premises only, and is by the landlord himself, this, according to the generally accepted view, will relieve the tenant from liability for future rents, though he remains in possession and enjoyment of the balance of the premises and the law will not in such a case apportion the rent." (Citing *Halligan* v. *Wade*, 21 Ill. 470 [74 Am. Dec. 108]; *Royce* v. *Guggenheim*, 106 Mass. 201 [8 Am. Rep. 322]; *Kuschinsky* v. *Flanigan*, 170 Mich. 245 [136 N. W. 362,

548

Ann. Cas. 1914A, 1228, 41 L. R. A. (N. S.) 430] ; *Briggs* v. *Hall,* 4 Leigh (Va.), 484 [26 Am. Dec. 326].) ''As has been said the landlord cannot so apportion his own wrong as to force the tenant to pay anything for the residue.'' (*Colburn* v. *Morrill,* 117 Mass. 262 [19 Am. Rep. 415].) ''So an action for use and occupation cannot be maintained after such a partial eviction, as the lease is not terminated by the unlawful eviction. He still continues to occupy that part of the estate from which he has not been evicted, under and by virtue of the lease, and no implied promise to pay arises. Not only does a partial eviction by the landlord preclude the recovery of rent accruing subsequent to the eviction and while the eviction continues, but it also suspends the right of the landlord to maintain proceedings to remove the tenant for the nonpayment of rent, as the tenant ceases by the act of his landlord to become liable legally for the rent.'' (Note, Ann. Cas. 1914A, 1233.) '' . . . An actual partial eviction by the landlord suspends the rent only during the continuance of the eviction, and on its termination the rent revives. . . . A partial eviction by the landlord does not, it seems, where the tenant remains in possession of the balance of the premises, release the tenant from other obligations on his part independent of the covenant to pay rent, such as his covenant to repair.'' (*Smith* v. *McEnamy,* 170 Mass. 26 [48 N. E. 781, 64 Am. St. Rep. 272].)

The rule in California seems to be in accord with the general rule. The leading case is *Skaggs* v. *Emerson,* 50 Cal. 3, wherein the court held, in an action for unlawful detainer to recover possession from the tenant by reason of failure to pay rent, that if a tenant is forcibly evicted from a substantial part of the demised premises, by the landlord, and the lease is not terminated, but the tenant still continues to occupy, under the lease, the part of which he retains possession, the tenant cannot be compelled to pay the rent reserved, for, in such case, there can be no apportionment of rent, and that if a tenant is forcibly evicted by the landlord from a substantial part of the demised premises, but still continues to occupy the remainder under the lease, the landlord cannot, under the unlawful detainer act, recover possession from the tenant by reason of nonpayment of rent while the eviction continues. (*Veysey* v. *Moriyama,* 184 Cal. 802, 805 [195 Pac. 662, 20 A. L. R. 1363] ; *Kelley* v. *Long,* 18 Cal. App. 156 [122

Pac. 832]; *Camarillo* v. *Fenlon,* 49 Cal. 202; *Automobile Truck etc. Co.* v. *Salladay,* 55 Cal. App. 219 [203 Pac. 163]; *North Pac. S. S. Co.* v. *Terminal Inv. Co.,* 43 Cal. App. 182 [185 Pac. 205]; 15 Cal. Jur. 682, 'sec. 92.) A different rule seems to apply where the tenant remains in possession of the whole of the premises leased and claims a constructive eviction. (*Veysey* v. *Moriyama, supra,* and cases cited; *Riechhold* v. *Sommarstrom Inv. Co., supra; Agar* v. *Winslow,* 123 Cal. 587 [56 Pac. 422, 69 Am. St. Rep. 84]; 15 Cal. Jur. 680, sec. 90; *Barrow* v. *Simon,* 2 Cal. App. (2d) 500 [38 Pac. (2d) 197].)

The evidence sufficiently supports the finding that there was a substantial partial eviction and accordingly, under the above-cited authorities, the tenant may remain in possession of the remainder and not be liable for the rent while the partial eviction continues. Therefore, an action of unlawful de-tainer to recover possession of the premises for nonpayment of rent will not lie if such eviction, under the evidence, was an eviction by the landlord or by his procurement. The evidence seems to justify a conclusion on the part of the trial court that the lessor and his successors authorized the state of California to take immediate possession of the leased premises by virtue of the two deeds in evidence and the subsequent acts of the appellant in making the claimed false promises without any intention of performing them, whereby the eviction was accomplished to the detriment of the tenant, and therefore can be said to be wrongful. (Civ. Code, sec. 1573, subd. 1.)

The original lessor granted this right of way to the state and retained the entire proceeds from the sale. Had the state instituted condemnation proceedings (and there was some evidence it intended to do so) and had an award been given, the tenant would have been entitled to share in the proceeds thereof according to his interest in the property. This would not have terminated the lease nor have absolved the lessee from his covenant to pay the full rent. (*City of Pasadena* v. *Porter,* 201 Cal. 381 [257 Pac. 526, 53 A. L. R. 679].)

The case of *McWilliams* v. *Harper,* 177 La. 728 [149 So. 437], decided by the Supreme Court of Louisiana, July 7, 1933, seems to be entirely in accord with the facts and this holding. In the cited case the plaintiff (the tenant) took

550

possession of the property leased by him, made improvements on it, used one of the buildings on it for a small grocery store and also as a filling station. In 1929, preparations were being made to hard-surface and improve the highway. The police jury of Bossier parish concluded to run the old road, which ran immediately in front of the store and filling station, a little farther to the north, and caused a survey to be made with that end in view. The survey thus made ran through the store building and filling station. The defendant landlord objected to the new route, since it would destroy his property. An expropriation suit was threatened if defendant would not sell a right of way. Defendant promised a right of way north of the store on condition that the police jury would place the store and all outhouses on the property in the same position with reference to the new road as they were then occupying with reference to the old road. The police jury, on the completion of the highway, turned the buildings around as promised. The new route reduced the area of the property appreciably and cut off a part of plaintiff's truck patch and, as above said, necessitated the moving of the buildings around, so as to face the new road. Plaintiff was not consulted about the making of the dedication, nor was his consent obtained for the new route, so far as that route might affect his rights in the leased premises, nor were any legal proceedings had by the police jury to obtain such rights. On January 11, 1930, plaintiff brought a suit, alleging that defendant, by making the dedication in disregard of his rights, breached and abrogated the contract of lease and caused his eviction. Defendant presented the argument that the lease, being of record, when the dedication was made, the police jury, by operation of law, accepted the dedication subject to it, and that whatever wrong may have been done to plaintiff in ignoring his lease, was done, not by defendant, since it had a right to dedicate its property, whether leased or not, but by the police jury. In disposing of this contention the court said:

"Under the facts of the case, as we find them, defendant does not occupy the position of a third person in whatever wrong was done plaintiff. He made the dedication, without reference to plaintiff's right to use of the property, and without consulting him. He had every reason to know at the time that the construction of the road would not be delayed until the expiration of the lease which still had several years

to run. He acquiesced in the construction of the road, without regard to the plaintiff's rights, and did the little he could do in furtherance of its prompt construction, as, for instance, the permission granted by him as to the removal of dirt.''

This holding is so applicable to the facts in the case before us that we adopt it as a proper disposition of the question raised here. Our conclusion is that appellant at least stood as a participator in the wrong done.

Accordingly the order of the trial court must be and is affirmed.

Barnard, P. J., and Marks, J., concurred.