[No. C019224. Third Dist. May 25, 1995.]

DOMINGO LEGARRA et al., Plaintiffs and Appellants, v.
FEDERATED MUTUAL INSURANCE COMPANY, Defendant and
Respondent.

1474

## Counsel

Barr, Sinclair & Hill, John D. Barr, Paul A. Roller and Frank V. Aiello for Plaintiffs and Appellants.

Meagher & Geer and Jeffrey M. Thompson for Defendant and Respondent.

Elliot L. Bien, Wiley, Rein & Fielding and Daniel E. Troy as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**MORRISON, J.**—Plaintiffs Domingo and Katherine Legarra brought a declaratory action seeking to establish defendant Federated Mutual Insurance Company's duty to defend and indemnify them in connection with a demand by the California Regional Water Quality Control Board for certain response costs for groundwater contamination on their property. Defendant successfully moved for summary judgment on the basis there was no potential for coverage under the policy. Plaintiffs appeal, contending the pollution exclusion in the policy does not apply and there is separate coverage under the personal injury provisions of the policy. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The Legarras acquired a property in Weaverville through a judicial foreclosure in 1986. The property had been used as a petroleum bulk plant. The Legarras entered into negotiations to sell the property to Glenn Robinson. During the negotiations, Federated Mutual issued a liability policy to Robinson covering the property. Mr. Legarra was named as an additional insured under the policy. The sale to Robinson did not go through.

The policy issued by Federated Mutual to Robinson provided coverage for bodily injury liability and property damage liability and agreed to defend any suit seeking damages on account of bodily injury or property damage. Among the exclusions to which the insurance did not apply was one for "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

This exclusion was replaced by a pollution exclusion endorsement. The pollution exclusion stated the insurance did not apply:

"(1) to bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants:

"(a) at or from premises owned, rented or occupied by the named insured;

"(b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste;

"(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or

"(d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:

"(i) if the pollutants are brought on or to the site or location in connection with such operations; or

"(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

"(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The pollution exclusion itself was amended to exclude pollution from any tank filled with a liquid product or from any piping or pumps connected to the tank.

The policy also contained a multicover liability endorsement which amended the insurance to include additions and extensions of coverage. This endorsement provided coverage and a duty to defend suits for damages because of personal injury and advertising injury. Personal injury was defined as injury arising out of one or more certain enumerated offenses, including "wrongful entry or eviction or other invasion of the right of private occupancy."

Effective July 15, 1986, the named insured under the policy was amended to include Mr. Legarra. The additional-insured endorsement provided that the coverage for the additional insured could be limited to (1) buildings and (2) bodily injury and property damage liability and premises medical payments with respect to the premises designated. The limitation was accomplished by checking the appropriate box or boxes. On the version of the additional-insured endorsement provided by the Legarras, neither box limiting coverage was checked. On the version provided by Federated Mutual, both boxes were checked.

In September of 1991, the Legarras received a letter from the California Regional Water Quality Control Board (the Board) demanding a work plan for investigation and monitoring of the property pursuant to Water Code section 13267.[1] The letter referenced an earlier letter of February 1990. In the February letter the Board stated fuel releases had likely occurred at the Legarras' property. The groundwater in the area flowed north to south; monitoring wells north of the property showed lower concentrations of gasoline than those south of the property. In addition, gasoline-stained soils were observed at the property. The Legarras denied receiving this letter. A subsequent letter from the Board advised the Legarras they might be responsible for reimbursing the Board for oversight expenses.

The Legarras tendered defense of the Board's demand (and prosecution of a suit they instituted against the previous owner of the property) to Federated

---

[1] At that time Water Code section 13267 provided in part as follows: "(a) A regional board, in establishing or reviewing any water quality control plan or waste discharge requirements, or in connection with any action relating to any plan or requirement or authorized by this division, may investigate the quality of any waters of the state within its region. [¶] (b) In conducting an investigation specified in subdivision (a), the regional board may require that any person discharging or proposing to discharge waste within its region . . . shall furnish, under penalty of perjury, those technical or monitoring program reports as the board may specify. . . ." (Stats. 1986, ch. 1013, § 8, pp. 3501-3502.)

The failure or refusal to provide these reports, or falsifying information therein, is a misdemeanor and is subject to civil liability. (Wat. Code, § 13268.)

Mutual. Federated Mutual declined coverage or defense for the claim involving the property, citing the pollution exclusion. The Legarras brought suit for declaratory relief, seeking to establish coverage and a duty to defend.

Federated Mutual moved for summary judgment on the basis that it owed no duty of defense or indemnification. The trial court granted Federated Mutual's motion and entered judgment for defendant.

## DISCUSSION

### I. *Pollution Exclusion*

A liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity. (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) The determination of whether the duty to defend arises is made by comparing the allegations of the complaint, as well as extrinsic facts, with the terms of the policy. Any doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured. (*Ibid.*)

An insurer may move for summary adjudication that no potential for liability exists and thus no duty to defend where the evidence establishes as a matter of law there is no coverage. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 298 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) In an action seeking declaratory relief on the issue of a duty to defend, different showings are required of the insured and the insurer. "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (*Id.* at p. 300, italics in original.)

The trial court found Federated Mutual met its burden by establishing the claim of the Board was excluded from coverage by the pollution exclusion.[2] Part 1 of the exclusion applies to pollution discharged or released at or from

---

[2]The policy imposes a duty to defend "any suit" seeking damages for bodily injury or property damage, or "any suit" seeking damages for personal injury or advertising injury. Federated Mutual did not argue below and does not contend on appeal that the Board's demand is not a suit triggering the duty to defend. Accordingly, we need not address the issue. Federal courts have reached different conclusions as to whether a potentially responsible party letter (PRP letter) from the Environmental Protection Agency constitutes a suit for purposes of the duty to defend. (Cf., e.g., *Aetna Cas. and Sur. Co., Inc.* v. *Pintlar Corp.* (9th Cir. 1991) 948 F.2d 1507, 1517 [Environmental Protection Agency's administrative claims against insured trigger insurer's duty to defend] & *Ray Industries, Inc.* v. *Liberty Mut. Ins.*

the property. Part 2 of the exclusion applies to any costs or expenses arising from government directed monitoring or cleanup.

■ An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1467 [267 Cal.Rptr. 708].) "Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. [Citations.]" (*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1296 [238 Cal.Rptr. 36].) ■ The pollution exclusion at issue here is known as an "absolute pollution exclusion." (Lathrop, Insurance Coverage for Environmental Claims (1995) § 3.07[3], p. 3-102.10; see *Alcolac Inc.* v. *California Union Ins. Co.* (D.Md. 1989) 716 F.Supp. 1546, 1549 ["This pollution exclusion is just what it purports to be—absolute—and the Court perceives no reason why [the insurer] should be denied the benefit of its bargain with [the insured], as reflected in the insurance contract."].) As the trial court found, it clearly and unambiguously excluded coverage for the Board's claim. (See *Titan Corp.* v. *Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 469-470 [27 Cal.Rptr.2d 476] and cases cited therein.)

The Legarras advance several reasons why the pollution exclusion does not apply in this case. Part 1 of the pollution exclusion applies only to pollution "at or from" the insured's premises. They read this language to mean the exclusion applies only if the pollution originates on the insured's property. They contend the groundwater contamination cited by the Board was caused by sources off of their property. In support of this assertion and in opposition to the motion for summary judgment, they provided the declaration of a licensed engineer who gave the opinion "there is a strong inference that hydrocarbon contamination has migrated onto the subject property from other sources."

The Legarras' contention that the exclusion does not apply to offsite pollution is not supported by the language of the pollution exclusion. The exclusion does not speak to the origin of the pollution; it requires only that the dispersal of pollution is "at or from" the insured's property. Here the Board's claim related to pollution "at" the site. (*East Quincy Services Dist.* v. *Continental Ins. Co.* (E.D.Cal. 1994) 864 F.Supp. 976, 980; see also *Gregory* v. *Tennessee Gas Pipeline Co.* (5th Cir. 1991) 948 F.2d 203, 206-207 [rejecting contention as "sophistry"]; *Northern Ins. Co.* v. *Aardvark Associates, Inc.* (3d Cir. 1991) 942 F.2d 189, 194 [rejecting argument pollution

_Co._ (6th Cir. 1992) 974 F.2d 754, 761 [under Michigan law, PRP letter does not trigger duty to defend].)

exclusion applies only to "active" polluters, not "passive" polluters].) Furthermore, even if the exclusion applies only to onsite pollution, it still applies in this case. The pollution exclusion applies to "alleged" discharges or dispersals. The Board's claim alleged the pollution was discharged from the Legarras' property.

Moreover, coverage for the Board's claim is clearly excluded under part 2 of the pollution exclusion as a government-directed cost. Although part 2 does not contain the "at or from" language found in part 1, the Legarras nonetheless contend part 2, like part 1, does not apply to pollution that originates offsite. Even if we accept the Legarras' interpretation that the "at or from" language is incorporated in part 2, there is no question that the Board's demand seeks monitoring and cleanup "at" the Legarras' property.

The Legarras contend that if the policy is interpreted to provide coverage when private parties are damaged by offsite pollution, but not when the third party is the government, the result is an unlawful boycott. Since we have rejected their contention that part 1 of the pollution exclusion applies only if the pollution originated on the insured's property, we need not address this undeveloped argument claiming an unlawful boycott.

Finally, the Legarras urge it is not clear petroleum is a "pollutant" under the pollution exclusion. They base this argument on *KFC Western, Inc.* v. *Meghrig* (1994) 23 Cal.App.4th 1167 [28 Cal.Rptr.2d 676], which held refined petroleum fell within the petroleum exclusion and thus was not a hazardous substance under the Carpenter-Presley-Tanner Hazardous Substance Account Act (Health & Saf. Code, § 25300 et seq.). The pollution exclusion does not limit pollutants to hazardous substances; pollutants include "any solid, liquid, gaseous or thermal irritant or contaminant." Nor does the pollution exclusion have a petroleum exclusion, as does the Hazardous Substance Account Act (Health & Saf. Code, § 25317). We agree with the summary rejection of this argument in a recent federal decision. "[The insured's] contention that petroleum is not a pollutant within this definition is belied both by science and common sense. Petroleum, either as a liquid or a gas, has been found to be an environmental contaminant or irritant by both courts and legislatures. [Citations.]" (*Staefa Control-System* v. *St. Paul Fire & Marine* (N.D.Cal. 1994) 847 F.Supp. 1460, 1471, mod. 875 F.Supp. 656.)

In their overlong reply brief the Legarras protest that the Board is wrong in claiming they are responsible for the pollution; they argue any liability on their part can only be based on an unacceptable application of strict liability.

The Legarras miss the point. The issue before the court is not whether the Board has a valid claim against them. It is simply whether Federated Mutual has a duty to defend the Legarras against that claim. Since the Board's claim falls squarely within the pollution exclusion, the answer is no.

We find no error in the trial court's conclusion that the pollution exclusion applied and coverage for the Board's claim was therefore excluded.

## II. *Personal Injury Endorsement*

 The Legarras contend that notwithstanding the pollution exclusion, the policy provides coverage for the Board's claim under the additional coverage provided by the personal injury endorsement. They contend the definition of personal injury as "wrongful entry" or "other invasion of the right of private occupancy" encompasses claims for trespass and nuisance and thus covers the groundwater contamination claim made by the Board.

Federated Mutual contends the Legarras, as additional insureds, have limited coverage and do not have personal injury coverage. It raises this point in a footnote, a strange place to assert a fact which, if true, would defeat the Legarras' major contention. Federated Mutual did not raise this point below. Further, as recited above, different versions of the additional insured endorsement were provided to the trial court. Therefore, at best, there was a disputed factual issue on the question of whether the Legarras had personal injury coverage. For purposes of our review, we shall assume the Legarras had full coverage for personal injury under the policy.

Both Federated Mutual and amicus curiae Insurance Environmental Litigation Association (IELA) argue part 2 of the pollution exclusion applies to coverage for personal injury.[3] While part 2 of the pollution exclusion does not have a specific reference to bodily injury and property damage, as does part 1, neither does it stand as an exclusion to all coverage under the policy. The pollution exclusion replaces exclusion (f) under the bodily injury and property damage coverage portion of the policy. The personal injury provision is an addition of coverage. Given the format of the policy, an insured would reasonably expect that the pollution exclusion applies only to this coverage for bodily injury and property damage. (See *West American Ins. Co.* v. *California Mutual Ins. Co.* (1987) 195 Cal.App.3d 314, 323 [240

---

[3]On February 2, 1995, we granted the application of IELA to file an amicus curiae brief in support of Federated Mutual. On April 7, 1995, after briefing in the case was complete and the case had been set for oral argument, we received the application of Mid-America Legal Foundation to file an amicus curiae brief in support of the Legarras. We denied the application as untimely.

Cal.Rptr. 540] ["exceptions should be construed narrowly so as to favor the insured, in order to protect the insured's reasonable expectation of coverage."].)

Numerous courts have considered the question of whether pollution claims may be covered by personal injury liability insurance and they have reached differing conclusions. (See, e.g., *Scottish Guarantee Ins. Co., Ltd.* v. *Dwyer* (7th Cir. 1994) 19 F.3d 307 [wrongful entry includes negligent trespass, so insurer has duty to defend suit alleging damage to groundwells by release of chemicals]; *Pipefitters Welfare Educ. Fund* v. *Westchester Fire* (7th Cir. 1992) 976 F.2d 1037 [duty to defend insured under personal injury provisions for release of polychlorinated biphenyls (PCB's) onto third party property]; *Titan Holdings Syndicate* v. *City of Keene, N.H.* (1st Cir. 1990) 898 F.2d 265 [duty to defend insured for damage caused by gases, noise, and lights from sewage plant unless evidence established different agreement]; *Hirschberg* v. *Lumbermens Mut. Cas.* (N.D.Cal. 1992) 798 F.Supp. 600, 604 [" 'other invasion of the right of private occupancy' " ambiguous so there was the potential for coverage for contamination of property by hazardous waste]; *Gregory* v. *Tennessee Gas Pipeline Co., supra,* 948 F.2d 203 [personal injury does not afford coverage for discharge of pollutants]; *East Quincy Services Dist.* v. *Continental Ins. Co., supra,* 864 F.Supp. 976 [unintended release of pollutants does not involve claim of occupancy of one over another so no coverage under personal injury provision]; *Staefa Control-System* v. *St. Paul Fire & Marine, supra,* 847 F.Supp. 1460, mod. 875 F.Supp. 656 [not reasonable for insured to believe there is coverage for pollution under personal injury when excluded by pollution exclusion].)[4]

Only one California appellate court has considered this issue so far. In *Titan Corp.* v. *Aetna Casualty & Surety Co., supra,* 22 Cal.App.4th at pages 473-476, Division One of the Fourth District found personal injury did not encompass contamination of groundwater. The court reasoned that the coverage afforded by the personal injury endorsement must be "limited to damages *other* than the injury to realty which an occupier of land may suffer when his quiet enjoyment of occupancy is disturbed." (*Id.* at p. 474, italics in the original.) To interpret groundwater pollution as a wrongful entry or other invasion of the right to private occupancy would nullify the pollution exclusion since all property damage caused by pollution would simply be

---

[4]Both Federated Mutual and amicus curiae IELA cite unpublished cases on this issue. In so doing, they ignore the clear mandate of rule 977 of the California Rules of Court not to cite or rely on unpublished cases. Their disregard of this rule prompted a motion to strike their briefs. We denied the motion, but we have not reviewed, or relied on, any unpublished case cited by Federated Mutual or amicus curiae IELA. (See *Casella* v. *City of Morgan Hill* (1991) 230 Cal.App.3d 43, 58 [280 Cal.Rptr. 876].)

recast as personal injury. (*Ibid.*) As we explain, we agree with the reasoning and holding of *Titan Corp.*

"In the world of liability insurance, personal injury coverage applies to injury which arises out of the commission of certain enumerated acts or offenses. [Citations.]" (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376].) The policy groups the enumerated offenses into three classes: (1) false arrest, detention, imprisonment, or malicious prosecution; (2) wrongful entry, eviction, or other invasion of the right of private occupancy; and (3) publications or utterances which are libelous or invade the right to privacy. We are concerned only with the second class.

The Legarras contend this class of offenses includes claims for trespass and nuisance. Federated Mutual contends it cannot cover property damage, but is limited to possessory interests.[5] In determining the extent of coverage, we begin with the language of the policy. (*City of Laguna Beach* v. *Mead Reinsurance Corp.* (1990) 226 Cal.App.3d 822, 830 [276 Cal.Rptr. 438].) The policy defines personal injury, in part, as "wrongful entry or eviction or other invasion of the right of private occupancy." Of the three terms, eviction is best understood. An eviction is the actual or constructive dispossession of a tenant from leased premises by the landlord or one acting under his authority. (*Giraud* v. *Milovich* (1938) 29 Cal.App.2d 543, 547 [85 P.2d 182].) An invasion of the right to private occupancy encompasses interference with an interest attendant to the possession of real property. (*Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 776 [215 Cal.Rptr. 416].) The scope of "wrongful entry" is less clear. A wrongful entry may be the wrongful dispossession by another. (Code Civ. Proc., § 1159; *Allen* v. *McMillion* (1978) 82 Cal.App.3d 211, 217-219 [147 Cal.Rptr. 77].) It has also, however, been equated with trespass. (*Fibreboard Corp.* v. *Hartford Accident & Indemnity Co., supra,* 16 Cal.App.4th at pp. 511-512.)

Other jurisdictions have differed on the scope of this type of personal injury in a liability policy. Some have limited it to landlord-tenant situations or situations in which a vested property right was invaded. (See, e.g., *Decorative Center* v. *Employers Cas.* (Tex.App. 1992) 833 S.W.2d 257, 261; *Martin* v. *Brunzelle* (N.D.Ill. 1988) 699 F.Supp. 167, 170.) Others have

[5]For an argument this class of personal injury does not cover trespass or nuisance, but is limited to a narrow cause of action for violation of the personal right not to be forcefully or wrongfully evicted from possession or occupancy of real property, see Bowman & Hofer, *The Fallacy of Personal Injury Liability Insurance Coverage for Environmental Claims* (1993) 12 Va. Envtl. L.J. 393.

expanded it to include an interference with the enjoyment of property. (See, e.g., *Town of Goshen* v. *Grange Mut. Ins. Co.* (1980) 120 N.H. 915 [424 A.2d 822, 824].)

Given these differing interpretations, the phrase "wrongful entry or eviction or other invasion of the right to private occupancy" could be considered ambiguous if read in isolation. Since an ambiguity in an insurance contract is construed against the insurer (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]), the phrase could be read to encompass a physical invasion that adversely affects the right of occupancy. Some courts have stopped their analysis here and have found the ambiguity in the policy language must be interpreted in favor of the insured and coverage. (See *Scottish Guarantee Ins. Co., Ltd.* v. *Dwyer, supra,* 19 F.3d at p. 312; *Pipefitters Welfare Educ. Fund* v. *Westchester Fire, supra,* 976 F.2d at p. 1041; *Gould Inc.* v. *Arkwright Mut. Ins. Co.* (M.D.Pa. 1993) 829 F.Supp. 722, 729; *Hirschberg* v. *Lumbermens Mut. Cas., supra,* 798 F.Supp. at p. 604.) We part company with these courts because we believe they have invoked this rule of construction too early in the process of interpretation. (Cf. *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

In determining whether the language is ambiguous, our analysis does not end with consideration of the language in the abstract. An insurance contract is subject to the same rules of construction as other contracts. (*Bank of the West, supra,* 2 Cal.4th at p. 1264.) We must interpret it to give effect to the intention of the parties at the time of contracting. (Civ. Code, § 1636.) This rule protects the objectively reasonable expectations of the insured as to coverage. (*Bank of the West, supra,* at p. 1265.) To determine whether the insured had a reasonable expectation of coverage, we must interpret the language in its context. (*Ibid.*) "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract. [Citation.]" (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916, fn. 7 [226 Cal.Rptr. 558, 718 P.2d 920].)

While "wrongful entry or eviction or other invasion of the right of private occupancy" in the abstract might apply to pollution damage, read in the context of the entire policy it is unreasonable to expect such coverage here. The Board's claim against the Legarras relates to property damage caused by groundwater contamination. Coverage for such damage is clearly excluded under the pollution exclusion. As the court in *Titan Corp.* noted, if pollution damage could simply be recast as personal injury, the pollution

exclusion would be nullified. (*Titan Corp. v. Aetna Casualty & Surety Co.*, *supra*, 22 Cal.App.4th at p. 474.) We must interpret the insurance contract to give effect to every part if possible. (Civ. Code, § 1641.) That can be done here by rejecting the expansive view of personal injury offered by the Legarras. Our conclusion that an insured could not have reasonably expected such coverage is supported by the fact the policy offered coverage for pollution cleanup as an optional coverage. Had the Legarras wanted such coverage, they could have purchased it. We " 'will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed.' " (*Pacific Employers Ins. Co. v. Maryland Casualty Co.* (1966) 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641].)

Our conclusion that personal injury does not cover pollution damage to real property is consistent with that of courts that have considered the policy as a whole. (*Titan Corp. v. Aetna Casualty & Surety Co.*, *supra*, 22 Cal.App.4th at pp. 474-476; *East Quincy Services Dist. v. Continental Ins. Co.*, *supra*, 864 F.Supp. at pp. 980-981; *Staefa Control-System v. St. Paul Fire & Marine*, *supra*, 847 F.Supp. at p. 1474, mod. 875 F.Supp. 656.) Cases that have found such coverage are not persuasive because they have interpreted the personal injury provision in a vacuum, ignoring the effect of the pollution exclusion on the insured's reasonable expectation of coverage.

### III. *Waiver*

■ The Legarras contend Federated Mutual waived the argument that personal injury coverage is inapplicable by failing to raise it when coverage was denied. ■ Under the waiver doctrine, an insurer waives its right to rely on defenses that it has not specified in its letter denying coverage, but which a reasonable investigation would have disclosed. (*Zumbrun v. United Services Auto. Ass'n.* (E.D.Cal. 1989) 719 F.Supp. 890, 895.) "Application of the waiver rule to disputes over whether coverage exists is designed as an incentive to compel an insurance company to fulfill its duty to thoroughly investigate a claim before denying coverage." (*Alta Cal. Regional Center v. Fremont Indemnity Co.* (1994) 25 Cal.App.4th 455, 465 [30 Cal.Rptr.2d 841].)

■ We find no waiver here. Federated Mutual told the Legarras there was no coverage because the Board's claim was excluded under the pollution exclusion. The insurer thus asserted the appropriate defense; it was not also required to assert there was no coverage under each particular coverage grant of the policy. The Legarras failed to show there was a potential for coverage under the personal injury portion of the policy. Federated Mutual

established there was no coverage. Accordingly, the trial court properly granted Federated Mutual's motion for summary judgment. (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th 287, 300.)

## IV. *Evidentiary Objections*

Finally, the Legarras contend the trial court erred in admitting letters containing unsworn statements of Board personnel over their hearsay objection. They contend Federated Mutual used this improper evidence to prove the source of the contamination. They assert the source issue was disputed, and therefore summary judgment was improper.

This contention must fail. The Legarras misunderstand the role of the Board's letters in this case. The letters were used to show the nature and scope of the Board's claims, which was necessary to determine coverage. They were not admitted for the truth of their assertion that the pollution originated on the Legarras' property. Indeed, Federated Mutual included as an undisputed fact Mr. Legarra's denial that the contamination emanated from his property. Moreover, since we have rejected the argument that the pollution exclusion does not apply to offsite pollution, the origin of the pollution was not relevant in determining a potential for coverage.

The judgment is affirmed.

Sparks, Acting P. J., and Brown, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 16, 1995.