**ECOLOGY WORKS, INC., a California corporation, Plaintiff—Appellant,**

v.

**ESSEX INSURANCE COMPANY, a Delaware corporation, Defendant—Appellee.**

No. 02–15658.

D.C. CV–01–02869–MJJ.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2003.

Decided March 17, 2003.

---

\* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. The "advertising injury" provision of the policy provided:

Before SILVERMAN and GOULD, Circuit Judges, and WEINER, District Judge.\*

MEMORANDUM\*\*

On November 8, 1999, Ecology Works obtained a commercial general liability policy from Essex Insurance which included advertising injury coverage.[1] Alkaline

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However,

Corp. sued Ecology alleging that Ecology's use of the phrase "DUSTMITEX" in advertising Ecology's anti-dust mite product violated the Lanham Act and state law because it was confusingly similar to Alkaline's trademark "MITE–X." Ecology appeals the district court's order denying its motion for summary judgment and granting the cross motion of Essex on the issue of whether Essex owed Ecology a duty to defend the Alkaline suit. The district court had jurisdiction pursuant to 28 U.S.C. § 1332; we have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the entry of summary judgment in favor of Essex and remand for entry of summary judgment in favor of Ecology.

The facts are known to the parties and will be addressed on insofar as necessary to explain our decision. In its order granting summary judgment to Essex, the district court focused on an interrogatory answer Ecology filed in the underlying action to find that Ecology's first use of the DUSTMITEX name predated its coverage under the Essex policy. Even though Alkaline did not allege in its underlying complaint when the conduct on which its cause of action is based occurred, the court agreed with Essex that "Ecology itself identifies the date upon which the complained of conduct began, [May 1998] and that date preceded the issuance of the Policy." Applying trademark law, the district court concluded that, as an assignee of the DUSTMITEX mark, Ecology stepped into the shoes of its assignor, and both the benefits, such as priority of use, and the liabilities followed the mark. Because it found the advertising injury "offense" was committed in May 1998, the district court held that "[u]nder no conceivable theory, therefore, did the 'offense' trigger coverage under the Policy." It thus concluded that Essex owed Ecology no duty under the policy to defend the underlying action and granted summary judgment to Essex.

We review the grant of summary judgment de novo. *See Delta Savings Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c); thus we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* at 1021.

The California law defining a liability insurer's duty to defend is "well settled." *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,* 100 Cal.App.4th 1017, 1033, 123 Cal. Rptr.2d 256 (2002). "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Gray v. Zurich Insurance*

we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurance" or offense and settle any claim or "suit" that may result. b. This insurance applies to: (2) "Advertising injury" caused by an offense commited in the course of advertising you goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions
This insurance does not apply to
a. "Personal injury" or "advertising injury":
(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.
"Advertising injury" is defined later in the policy to mean "injury arising out of one or more of the following offenses: ... c. Misappropriation of advertising ideas or style of doing business. d. Infringement of copyright, title or slogan."

*Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993). "[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray,* 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168 (emphasis in original). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Horace Mann,* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Gray,* 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168.

"For an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. . . . Hence the duty 'may exist even where coverage is in doubt and ultimately does not develop.'" *Saylin v. California Ins. Guarantee Assn.,* 179 Cal. App.3d 256, 263, 224 Cal.Rptr. 493 (1986) (internal citation omitted). The duty to provide a defense is a "continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage. . . ." *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. "The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the *alleged facts or know extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mutual,* 100 Cal. App.4th at 1034, 123 Cal.Rptr.2d 256 (emphasis in original).

Once the possibility of coverage has been raised, the insurer may defeat such claim of coverage by extrinsic evidence, but only where "such evidence presents undisputed facts which conclusively eliminate a potential for liability." *Montrose,* 6 Cal.4th at 298–99, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The *Montrose* Court rejected the insurer's position that, rather than a mere "possibility" of coverage, the law required a "reasonable potential for coverage." It held, applying *Gray* that the insured is entitled to a defense if the "underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose,* 6 Cal.4th at 299, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (emphasis in original) (citing *Gray,* 65 Cal.2d at 275–76, 54 Cal. Rptr. 104, 419 P.2d 168).

We find the district court erred in its analysis of the duty to defend. Although citing *Gray* and *Montrose,* the district court improperly focused its attention solely on the issue of whether the offense occurred prior to the issuance of the policy, applying trademark law to resolve this question. This analysis put the cart before the proverbial horse. Rather than deciding the duty to defend issue by looking at the potential for coverage and then determining whether Essex had conclusively eliminated that potential, the district court jumped directly to the extrinsic evidence, concluding from the interrogatory responses in the Alkaline suit that the policy was never triggered. In other

words, the district court made a coverage determination, not a duty to defend determination. As the duty to defend is broader than the duty to indemnify, and only the duty to defend was raised in Ecology's declaratory judgment complaint, we find this was error.

Under the California Supreme Court's analytical framework, the allegations contained in the Alkaline complaint established potential coverage as a matter of law. Similar to the situation encountered in *Atlantic Mutual,* the underlying complaint was silent on the issue of when the alleged advertising "offense" occurred. Applying the *Gray / Montrose* analysis, that court determined that

> The allegations of the Continental complaint did not specify the date of Lamb's first utterance of any disparagement. Thus, based upon those allegations alone, the *possibility* of coverage existed. That complaint was tendered to Atlantic Mutual. This was sufficient, at that moment, to create a *potential* for coverage and Atlantic Mutual's duty to defend arose.

*Atlantic Mutual* at 1038, 123 Cal.Rptr.2d 256 (emphasis in original). The court went on to find that Atlantic Mutual's extrinsic evidence—a declaration executed by its claims adjuster to the effect that a representative of the insured told him the dispute originated prior to the policy term— was (1) vague and ambiguous, (2) did not clearly establish the date of the critical first publication, and (3) did not *conclusively* negate the possibility of coverage. *Id.* at 1039, 123 Cal.Rptr.2d 256. It reiterated that, as the potential for coverage was established by the allegations of the underlying complaint which was silent as to the date of the offense, the insurer needed no other information on this point. Rather, the court held that

> Even though it may ultimately be determined that Atlantic Mutual has a viable defense to coverage by virtue of the "first publication" exclusion, this can *only* affect its liability for indemnification. Its duty to defend depended on the existence of only a *potential* for coverage. That *potential* was never conclusively negated and obviously cannot be negated short of an actual trial to resolve what is clearly a genuine factual dispute.

*Id.* at 1040, 123 Cal.Rptr.2d 256 (emphasis in original).

The *Atlantic Mutual* decision is indistinguishable from the situation presented here. It is undisputed by the parties, and the district court acknowledged, that the Alkaline complaint, while raising claims within the Essex policy's coverage, did not identify the date on which any of Ecology's allegedly improper conduct occurred. The insurer's duty to defend was thereby clear from the face of the underlying complaint. The issue of whether Ecology stepped into the shoes of the assignor of the mark, and accordingly, first used the mark in May 1998, is one that cannot be negated short of an actual trial on the underlying complaint. If Ecology's affirmative defense is rejected, it will be denied a defense for a viable claim that by definition the insurer must indemnify. The potential for coverage and the concomitant duty to defend cannot be extinguished in such circumstances where the insurer's duty to indemnify remains contingent.

Accordingly, the entry of summary judgment in favor of Essex on the issue of its duty to defend the underlying suit will be vacated and the case will be remanded with instructions to enter summary judgment in favor of Ecology.

REVERSED AND REMANDED.

GOULD, Circuit Judge, dissenting.

Because the policy's first-publication exclusion bars any potential for coverage, I respectfully dissent.

In a declaratory action for duty to defend, "[t]o prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (emphasis omitted).

We first compare the allegations of the third-party complaint with the terms of the policy to determine whether there is a duty to defend. *Montrose,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The complaint filed by Alkaline on January 25, 2001, alleged that Ecology's use of the "DUSTMITEX" mark in advertising violated the Lanham Act and state law because it was confusingly similar to Alkaline's trademark "MITEX." Because the insurance policy that Ecology purchased from Essex covers "advertising injury" committed during the policy period, I agree with the majority that the Alkaline complaint raises the potential for coverage and triggers Essex's duty to defend. This conclusion does not end the inquiry, however.

Even though the factual allegations on the face of the Alkaline complaint trigger the duty to defend, Essex can discharge that duty "if it provides conclusive evidence demonstrating that [an] exclusion applies." *Atlantic Mutual v. Lamb,* 100 Cal.App.4th 1017, 1038–39, 123 Cal.Rptr.2d 256 (2002). *See also Ringer Assoc. Inc. v. Md. Cas. Co.,* 80 Cal.App.4th 1165, 1185, 96 Cal.Rptr.2d 136 (2000) (concluding there was no duty to defend because an exclusion applied); *Legarra v. Fed. Mut. Ins.*

*Co.,* 35 Cal.App.4th 1472, 1482, 42 Cal. Rptr.2d 101 (1995) (same).

Ecology's policy contains an exclusion that says the policy does not apply to "advertising injury ... arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." The policy defines "advertising injury" to include copyright infringement. Essex argues that any potential for coverage is negated by application of the policy's "first-publication exclusion." I agree.

There is a split in authority about whether the first-publication exclusion applies to copyright infringement, which Essex fairly acknowledges. *Compare, e.g., Iron Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260 (E.D.Mich.1993) (concluding the exclusion applied only to advertising injury resulting from slander, libel or invasion of privacy); *Arnette Optic Illusions, Inc. v. ITT Hartford Group, Inc.,* 43 F.Supp.2d 1088 (C.D.Cal.1998) (finding the exclusion ambiguous and thus concluding it does not apply to copyright infringement); *with Applied Bolting Tech. Prod., Inc. v. USF & G,* 942 F.Supp. 1029, 1036–37 (E.D.Pa 1996) *aff'd,* 118 F.3d 1574 (3d. Cir.1997); *Maddox v. St. Paul Fire & Marine Ins. Co.,* 179 F.Supp.2d 527 (W.D.Pa.2001) (declining to decide the issue but noting that the Ninth Circuit has disapproved of *Arnette Optics* and has found the exclusion to be not ambiguous in *Maxtech Holding, Inc. v. Federal Ins. Co.,* 202 F.3d 278, n. 4 (9th Cir.1999) (unpublished)). The California state courts have not decided whether the first-publication exclusion applies to copyright law. And, while the United States District Court for the Central District of California in *Arnette Optics* concluded that the split in authority shows an ambiguity in the exclusion, I do not find this reasoning persuasive. First, the plain language of the ex-

clusion is not ambiguous. The exclusion applies to "advertising injury" and the policy defines "advertising injury" to include copyright infringement. Second, the California courts have not adopted the most strict interpretation of the first-publication exclusion even where the exclusion could be interpreted in more than one way. *See Ringler,* 80 Cal.App.4th at 1182–83, 96 Cal. Rptr.2d 136 (choosing broader interpretation of first-publication exclusion in defamation claim to give the exclusion effect).

Ecology does not contend that the first-publication exclusion is categorically inapplicable to copyright infringement.[1] Considering the plain language of the exclusion and its definition, the contentions of the parties, and the issue before us, I believe that California would likely adopt the position that first-publication is a defense to coverage for claimed copyright infringement.

Under this first-publication exclusion, to defeat a duty to defend Essex must prove by conclusive evidence (1) that the copyright infringement alleged by Alkaline arises out of oral or written *publication* of the DustMitex mark and (2) that the publication occurred *before the policy period.* Ecology concedes that the DustMitex mark was published before the policy period by Mark Zachary, the assignor of the mark to Ecology.[2] In determining whether the application of the first-publication exclusion conclusively defeats Essex's duty to defend, therefore, only one issue remains: Whether the pre-policy publication of the DustMitex mark is imputed to Ecology as assignee of the DustMitex mark.

When Ecology obtained the www.dustmitex.com domain name from its assignor on June 2, 2000, all of the benefits and liabilities that attached to the mark also transferred to Ecology as the assignee. *See No Touch North America v. Blue Coral, Inc.,* 43 U.S.P.Q.2d 1862, 1863, 1997 WL 686248 (C.D.Cal.1997). In its registrations to the Patent and Trademark Office, Ecology claimed mark priority based on the assignment from Zachary. Ecology was able to do so because an assignee of a mark steps into the shoes of the assignor. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:15 (4th ed.2002). *See also Carnival Brand Seafood Co. v. Carnival Brands, Inc.,* 187 F.3d 1307, 1315 (11th Cir.1999) (recognizing that the assignee steps into the shoes of the assignor). *Cf.* 15 U.S.C. § 1127 (the Lanham Act defines "applicant, registrant" to include the "legal representatives, predecessors, successors and assigns of such applicant or registrant").

The language of the first-publication exclusion does not require that the policyholder published the material before the policy period, but merely that the publication of the material first took place before the policy period. *See Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.,* 203 F.Supp.2d 704, 717 n. 4 (S.D.Tex.2000) (recognizing that the first publication exclusion "does not state that the material must have been first published by the same party making the claim."). In *Matagorda,* the plaintiffs argued that the first-publication exclusion was inapplicable because any pre-policy publication resulted from the activities of Megasaurus, a predecessor company. 203 F.Supp.2d at 716.

---

1. Rather, Ecology argues that the first-publication exclusion does not apply to Ecology because Ecology did not publish the DustMitex mark before the policy period, only its predecessor did.

2. Ecology argues that Mark Zachary, the previous owner of the dustmitex.com website, published the mark before the policy period but that Ecology did not "publish" but only "used" the mark before the policy period.

That argument was rejected by the district court on two grounds: (1) the application of the first-publication exclusion turns on whether the material was published before the policy period began, and is not limited to publications by the insurance claimant and (2) one of the plaintiffs was the president and sole owner of Megasaurus and knew that Megasaurus had been sued for infringement before the mark was assigned. *Id.* at 716–17. Similarly, Ecology's predecessor published the mark, and Ecology knew that Zachary had published the mark before accepting the assignment and before buying the policy.

The majority relies on *Atlantic Mutual* to conclude that the applicability of the first-publication exclusion is a question of indemnification appropriate for trial, not a question of duty to defend. But *Atlantic Mutual* does not stand for such a broad proposition. *Atlantic Mutual* acknowledges that an insurer may rely on an exclusion to deny coverage, but concludes that the insurer failed to *conclusively* show through *undisputed* facts that the first-publication exclusion applied to bar coverage. 100 Cal.App.4th at 1038–39, 123 Cal. Rptr.2d 256. The insurer in *Atlantic Mutual* tried to defeat its duty to defend with a declaration from its own claims adjuster, who stated that the insured told him that the dispute in the underlying case began before the policy period. *Id.* at 1038, 123 Cal.Rptr.2d 256. The court concluded this declaration was neither conclusive nor based on undisputed facts. *Id.* at 1039, 123 Cal.Rptr.2d 256.

By contrast, here, Ecology does not dispute that Zachary published the Dustmitex mark before the policy period, and Ecology does not dispute that Zachary assigned the Dustmitex mark to Ecology. Because Ecology steps into the shoes of its assignor, Essex has conclusively demonstrated through undisputed facts that the Dustmitex mark was published before the policy period. There is no potential for coverage and corresponding duty to defend.

Because Essex has conclusively demonstrated that the first-publication exclusion bars coverage of the underlying claim, I would affirm the district court's grant of summary judgment to Essex.[3] I respectfully dissent.

---

**3.** In my view, the first-publication exclusion bars coverage irrespective of whether we accept the district court's conclusion that the declaration submitted by Ecology's president, James Burnett, was a sham declaration. In that declaration, Burnett explains that Ecology did not use the Dustmitex mark prior to May 2002 and that any prior use of the mark was limited to use by Mark Zachary, Ecology's predecessor. Although I would credit the district court's sham declaration finding because I do not believe the district court abused its discretion in making such a finding, that finding is not necessary to and does not affect the applicability of the first-publication exclusion. The timing of Ecology's first use of the Dustmitex mark does not affect the applicability of the first-publication exclusion. The first-publication exclusion turns on publication, not use.